222 Cal.App.3d 931 (1990)
272 Cal. Rptr. 115
In re VENUS B., a Person coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN SERVICES, Plaintiff and Respondent,
v.
VENUS A., Defendant and Appellant.
Docket No. B044822.
Court of Appeals of California, Second District, Division Two.
August 1, 1990.
*932 COUNSEL
James I. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.
De Witt W. Clinton, County Counsel, Sterling Honea and Joe Ben Hudgens, Deputy County Counsel, for Plaintiff and Respondent.
*933 OPINION
ROTH, P.J.
Venus A., the mother of minor Venus B., appeals from a disposition order in which custody of Venus B. was taken from her parents and the child was placed with her maternal grandmother.
The trial court believed Venus B.'s testimony in the adjudication hearing that her stepfather had fondled her on several different occasions. In the court's assessment, Venus's evidence was true. He observed "she was under a great deal of stress, she didn't want to be here testifying."
The minor reported the conduct following a school program in which children were told about inappropriate touching by adults. The minor's second grade teacher testified that on March 29, 1989, a safety program was presented at school. The minor reported that she did not like it when her daddy got on top of her when she was in bed. She repeated this information when she talked individually to her teacher and further told the teacher she did not like it when he touched her in her private areas. No other students that day made any complaints. The minor cried during their conversation but washed up and pulled herself together when the other children came to the classroom. Both parents denied any molestation.
The stepfather testified at the dispositional hearing, again denying he in any way wrongfully touched the minor and stated, "My desire is for us to start living back together as a family and to get this whole damn case out." He was against therapy because the allegations were not true, although he would send the minor "to determine what caused this whole thing." He would agree not to be alone with the child but would not go to any counseling to deal with family dysfunction. However, he might agree to go as a forum to voice concerns.
The mother testified at the dispositional hearing that she would agree that the minor would not be alone with her husband but she does not think counseling would help because the minor has not been a victim of sexual abuse. They did not want to be in a program because her husband is not a molester and she does not want a program of parenting education because, "I have done nothing wrong so why do I need something like that?" She also said, "This is all a big joke and all a lie." Responding to portions of the report in which it was reported she might abandon Venus and move in with her husband, the mother testified she would not have moved in with her stepfather if her intent was to abandon her daughter.[1]
*934 The court observed that this was an extremely difficult case, noting the mother and her husband did not intend to engage in any kind of treatment program and were overlooking the best interests of the child. When the minor recanted her testimony at the dispositional hearing, the court found a lot of pressure had been brought upon the minor and refused to dismiss the earlier allegations. The court placed Venus with the maternal grandmother for at least six months and ordered that the grandmother must be present if the stepfather visits.
The court then ordered appellant's husband into counseling, and he shook his head no. The court observed, "whether or not family reunification takes place will be determined by the cooperation of the mother and the stepfather in a program." When the court stated, "Venus is very troubled and needs your support and needs your understanding, and I must say that she hasn't been getting that," the mother apparently mouthed some words and the court replied, "Now I saw the words on your lips. I'm not going to repeat them because I don't want it in the record because I would have to hold you in contempt. [¶] All right. But I do want you to know that everything that this court is doing is in the best interest of your child, and you need to address the best interest of your child as well. [¶] This court doesn't get the feeling that you are doing that, and there is nothing that's been placed before this court, either in these reports that I have read or the testimony that I have heard, which indicates to me that you are seriously considering what is in her best interest. [¶] You need to do that and you need to do that very, very quickly."
The court then ordered the mother and stepfather to engage in a program of joint counseling and individual counseling around the issue of children who have been sexually abused or who believe they have been sexually abused. The court stated it was not going to consider family reunification until such time as the parties demonstrated the intent to proceed in that fashion.
Appellant argues the court lacked authority to order the stepfather into therapy; family reunification services should not be conditioned on his obedience of that unlawful order; and the court improperly excluded evidence. She asks that a new adjudication hearing be ordered.

DISCUSSION

1. The juvenile court did not lack authority to order the stepfather into therapy.

(1) Appellant argues that Welfare and Institutions Code section 362, subdivision (c), which allows the juvenile court to order participation in a *935 counseling program, does not apply to stepparents. The subject subdivision provides: "The juvenile court may direct any and all reasonable orders to the parents or guardians of the minor who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section, including orders to appear before a county financial evaluation officer. Such an order may include a direction to participate in a counseling or education program, including, but not limited to, a parent education and parenting program operated by a community college, school district, or other appropriate agency designated by the court. A foster parent or relative with whom the minor is placed may be directed to participate in such a program in cases in which court deems participation is appropriate and in the child's best interest. The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300."
In re Jody R. (1990) 218 Cal. App.3d 1615 [267 Cal. Rptr. 746], upon which appellant places great reliance, holds that the juvenile court lacks jurisdiction to order a parent's live-in companion to comply with child welfare and reunification requirements. The court In re Jody R., supra, 218 Cal. App.3d at pages 1626-1628, further observed that the juvenile court would have lacked authority even if the live-in companion had been a "de facto parent." The court noted the good intentions of the juvenile court but ruled "good intentions in bad situations do not confer upon a juvenile court powers not granted by the Legislature. Absent legislative authority to the contrary, a juvenile court simply has no jurisdiction in a dependency proceeding to compel the involuntary joinder of a live-in companion of a child's parent." (Id., at pp. 1628-1629.)
However, in Welfare and Institutions Code section 202, subdivision (b), the Legislature has specifically directed "... Juvenile courts and other public agencies charged with enforcing, interpreting, and administering the Juvenile Court Law shall consider the safety and protection of the public and the best interest of the minor in all deliberations pursuant to this chapter...." It is this policy which must guide our decision. Whether or not Welfare and Institutions Code section 362, subdivision (c) applies to live-in companions,[2] it clearly and explicitly applies to a "... relative with whom the minor is placed...." If family reunification takes place, the minor will be placed with her mother and stepfather; for the purposes of section 362, subdivision (c), we hold that both are "relatives."
Given the purposes of the juvenile court law, we cannot imagine that the Legislature intended that stepfathers with whom the minor resides, and *936 who were found to have abused their stepchildren, could in effect force the minor's parent to choose between the stepparent and the child rather than require counseling as a reasonable condition precedent to family reunification. Counseling is a less onerous alternative than the one allowed by the court in Jody R. and, in a case like that at bench, is clearly in the minor's best interests.
Since we find the juvenile court did not lack authority to order the stepfather into therapy as a condition of family reunification, we need not discuss appellant's second contention, that family reunification services should not be conditioned on obedience of an unlawful order.

2. The juvenile court did not improperly exclude evidence.

(2) Appellant contends the trial court erred in foreclosing inquiry into various subjects she asserts tend to disprove the minor's credibility and, furthermore, in denying a brief continuance to comply with Evidence Code section 783 (requiring a written motion accompanied by an affidavit in which an offer of proof is stated in any civil action alleging conduct constituting sexual harassment, sexual assault, or sexual battery, "if evidence of sexual conduct of the plaintiff is offered to attack [the] credibility of the plaintiff....") We disagree.
We have reviewed the record and find the trial court did not abuse its discretion in its various evidentiary rulings and, furthermore, there would be no prejudice in that much of the omitted evidence was cumulative.
The propriety of many of the trial court's rulings can be seen in the Legislature's policy pronouncement in enacting Evidence Code section 783: "The Legislature finds and declares that it is the existing policy of the State of California to ensure that the causes of action for claims of sexual harassment, sexual assault, or sexual battery are given proper meaning. The discovery of sexual aspects of complainant's lives, as well as those of their past and current friends and acquaintances, has the clear potential to discourage complaints and to annoy and harass litigants. That annoyance and discomfort, as a result of defendant or respondent inquiries, is unnecessary and deplorable. Without protection against it, individuals whose intimate lives are unjustifiably and offensively intruded upon might face the `Catch-22' of invoking their remedy only at the risk of enduring further intrusions into details of their personal lives in discovery, in an open quasi-judicial or judicial proceedings.
"The Legislature is mindful that a similar state of affairs once confronted victims in criminal prosecutions for rape, who often ran the risk of finding *937 their own moral characters on trial during the prosecution of their assailants. The Legislature has taken measures to curb those abuses in rape proceedings. It is the intent of the Legislature to take similar measures in sexual harassment, sexual assault, or sexual battery cases.
"The Legislature concludes that the use of evidence of a complainant's sexual behavior is more often harassing and intimidating than genuinely probative, and the potential for prejudice outweighs whatever probative value that evidence may have. Absent extraordinary circumstances, inquiry into those areas should not be permitted, either in discovery or at trial." (Stats. 1985, ch. 1328, § 1, pp. 4654-4655.)
The above statement of legislative policy is equally applicable to juvenile dependency cases where sexual assault has been alleged. We need not decide whether the specific requirements of Evidence Code section 783 are applicable. Whether or not those requirements were met, appellant failed to demonstrate the type of "extraordinary circumstances" in which inquiry into the minor's sexual behavior might be permitted. The trial court did not abuse its discretion in its evidentiary rulings.
The judgment is affirmed.
Compton, J., and Gates, J., concurred.
NOTES
[1] The mother moved the previous week to her stepfather's home in Santa Maria. If her husband could return to the home, she, her husband, and the minor would move to Victorville.
[2] We urge the Legislature to clarify the language since many of the cases under Welfare and Institutions Code section 300 involve nonrelative companions of the minor's parent.