[No. B197381. Second Dist., Div. Four. Jan. 24, 2008.]

In re SILVIA R., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
SILVIA R., Defendant and Appellant.

COUNSEL

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Joanne Nielsen, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

WILLHITE, J.—

## INTRODUCTION

Silvia R. (Mother) appeals from a disposition order as to her daughter, also named Silvia R. (Silvia). Mother contends that the juvenile court did not have jurisdiction to include in the disposition order a requirement that Silvia's stepfather and her adult brother, both of whom sexually abused Silvia, participate in sexual abuse counseling for perpetrators.

Disagreeing with *In re Venus B.* (1990) 222 Cal.App.3d 931, 935 [272 Cal.Rptr. 115] (*Venus B.*), we hold that when the child is removed from the parent's home, Welfare and Institutions Code section 362, subdivision (c), does not authorize the juvenile court to order other relatives with whom the child is not placed to participate in counseling or education programs. Rather, Welfare and Institutions Code section 361, subdivision (c), authorizes the court to impose *on the parent*, as a condition of the disposition plan for

reunification with the child, that the parent demonstrate to the court's satisfaction that the parent can protect the child. (§ 361, subd. (c)(1).) Further, when the child has been the victim of sexual abuse by other relatives, the court has the authority to order that the parent must reside separately from the perpetrators, or must demonstrate that the perpetrators voluntarily participated in counseling and satisfactorily addressed the issues involved, such that the child may safely reside with them.

Based on our holding, we reverse those portions of the disposition order directing the stepfather to participate in a parenting program and counseling, and directing the adult brother to participate in counseling. In all other respects, the disposition order is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The Los Angeles County Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code section 300 petition on October 12, 2006, regarding Silvia (born in July 1991).[1] DCFS alleged that Silvia's stepfather, Felix G. (Stepfather), and her 19-year-old brother, Kevin R., had sexually abused her, and that Mother failed to protect her from their abuse. (§ 300, subds. (b), (d), (i).)

Silvia stated that Kevin had been touching her in a sexual manner since she was eight years old. She did not tell anyone because she thought it was normal for brothers and sisters to have sexual contact. In 2004, she and Kevin moved to the United States from El Salvador to live with Mother. Shortly thereafter, her stepfather began to caress her thighs and breasts, and to force hugs on her. She complained to Mother about Kevin and Stepfather, but Mother refused to help her. On September 21, 2006, Kevin played a pornographic movie and told her, "let's do it." When she refused, he pulled her pants down and attempted to rape her. She told Mother, who did not believe her.

On September 29, 2006, Silvia and her family had a meeting, during which she discussed all of the abuse. The family blamed her, and instead discussed her behavior. She went to the sheriff's department in Lennox the following day and reported the abuse. She told the deputies she had been having suicidal thoughts as a result of the abuse. DCFS was contacted, and she was taken to Gateway Hospital for psychological evaluation and treatment. (See § 5150.)

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

Mother denied all of the allegations and said Silvia was being influenced by her 24-year-old lesbian lover, Ilsy, who wanted Silvia to live with her. Mother denied that Silvia had ever reported any abuse to her, said that DCFS had no proof of anything, and refused to have Stepfather and Kevin leave the house without having physical evidence they had molested Silvia. DCFS had proposed a "safety plan" whereby Stepfather and Kevin would leave the home and Silvia could be returned to Mother's custody, but Mother refused.

Silvia told her foster mother and the social worker that Ilsy, who was a relative of Stepfather, had been stalking her, and Silvia had become fearful of her. Silvia had initially confided in Ilsy regarding the sexual abuse, and Ilsy had encouraged Silvia to report the abuse to the police. Silvia acknowledged that Ilsy wanted Stepfather and Kevin to get in trouble so Silvia could stay with Ilsy. Silvia preferred to remain in her current placement some distance from her home and school, in order to avoid contact with Ilsy.

The adjudication hearing began on November 6, 2006, but, for reasons not relevant here, it was not concluded until March 6, 2007. The court sustained counts in the section 300 petition brought pursuant to subdivisions (b) and (d), as amended, and found Silvia to be a person described by section 300.

The court proceeded to disposition, declaring Silvia to be a dependent of the court. It found by clear and convincing evidence that substantial danger existed to Silvia's physical or emotional well-being, removed her from Mother's physical custody, and ordered her suitably placed. DCFS was ordered to provide family reunification services. Mother was ordered to complete a DCFS-approved parenting program, conjoint counseling with Silvia when deemed appropriate, and sexual abuse awareness counseling. Mother was granted monitored visitation. Silvia's biological father, Oscar A., was not present, but was ordered to complete a parenting program.[2] Silvia was ordered to participate in individual counseling, and conjoint counseling with Mother when recommended by her therapist.

In addition, the court ordered Stepfather to attend a DCFS-approved parenting program and sex abuse counseling for perpetrators. The court also ordered Kevin to participate in sex abuse counseling for perpetrators. Mother's attorney objected to the disposition orders directed to Stepfather and Kevin, noting that they were not present in court or represented by counsel. She argued that the orders placed an undue burden on Mother and the family. Counsel requested that the court instead fashion the order "to direct that the

---

[2] Oscar is not a party to this appeal.

Mother must participate in counseling and must make a determination as to how she would structure her family life according to the court order."

The court responded that, "in an effort to provide a meaningful reunification plan for Mother, in the event these other individuals are in the home, certain conditions would need to take place in order for Silvia to reside with the Mother, so the court will make those counseling orders at this time."

Mother filed a timely notice of appeal.

## DISCUSSION

### I. Mother's Standing to Appeal

Respondent contends Mother does not have standing to challenge on appeal the orders directed toward Stepfather and Kevin because she is not an aggrieved party as to those portions of the order. Respondent argues that Mother's arguments as to the injurious nature of the order are entirely speculative: to wit, *if* Stepfather and Kevin do not comply with the counseling orders, as is *likely*, Mother will not be able to reunify with Silvia, even *if* Mother complies fully.

Mother argues that she has a legally cognizable, immediate and substantial interest in the disposition orders made because her child was declared a dependent and removed from her physical custody. Her immediate and substantial interest is her liberty interest in parenting her daughter, with which the state has now substantially interfered. (*In re Kieshia E.* (1993) 6 Cal.4th 68, 76 [23 Cal.Rptr.2d 775, 859 P.2d 1290].) In addition, Mother argues that her "substantial interest in the proceedings 'may suffer some injury, actual or threatened' as a consequence of the court directing disposition orders to two non-parties." (See *Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 751 [45 Cal.Rptr.2d 333].) She asserts that even if the injury to her interests is only threatened, that is enough to trigger standing.

"[T]he parent must . . . establish he or she is a 'party aggrieved' to obtain a review of a ruling on its merits. [Citations.] To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision. A nominal interest or remote consequence of the ruling does not satisfy this requirement." (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 734 [90 Cal.Rptr.2d 561].)

We conclude that Mother has standing to obtain appellate review of the portions of the disposition order which purport to order Stepfather and Kevin, who are not parties and have not appeared in the matter,[3] to participate in counseling. Those orders are an integral part of Mother's disposition plan, and they directly impact her prospects for reunifying with Silvia. While Stepfather's and Kevin's conduct created the situation which led to the court's assumption of jurisdiction, Mother's failure to protect Silvia is the matter to be addressed by the disposition plan as it relates to Mother. The manner in which she is ordered to address that problem, and the validity of the orders encompassed within her disposition plan, are issues which Mother necessarily has standing to address.

## II. Statutory Authority to Enter Orders Regarding Nonparties

■ Mother contends that the juvenile court lacked jurisdiction to order Stepfather and Kevin to participate in counseling. We agree, and hold that when a child is removed from the parent's home, the juvenile court is not authorized by section 362, subdivision (c), to order other relatives with whom the child is not placed to participate in counseling or education programs. However, under section 361, subdivision (c), the court may impose on the parent, as a condition of the disposition plan for reunification with the child, that the parent demonstrate to the court's satisfaction that the parent can protect the child. (§ 361, subd. (c)(1).) When the child has been the victim of sexual abuse by other relatives, the court may order that the plan for protection requires the parent to reside separately from the perpetrators, or to demonstrate that the perpetrators voluntarily participated in counseling and satisfactorily addressed the issues involved, such that the child may safely reside with them.

■ In dependency proceedings, " '[a] superior court convened as and exercising the special powers of a juvenile court is vested with jurisdiction to make only those limited determinations authorized by the legislative grant of those special powers.' (*In re Lisa R.* (1975) 13 Cal.3d 636, 643 [119 Cal.Rptr. 475, 532 P.2d 123]; see § 245 ['[e]ach superior court shall exercise the jurisdiction conferred by this chapter . . .'].) In the absence of such specific

---

[3] "A party of record is a person named as a party to the proceedings or one who takes appropriate steps to become a party of record in the proceedings. (*Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199, 201 [124 P.2d 815].) A person does not become a party of record merely because his or her name and interest appear in documents filed with the court or are referenced in the judgment. (*Ibid.*)" (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715 [99 Cal.Rptr.2d 915].)

statutory authorization, a juvenile court is vested with authority to make only those determinations which are 'incidentally necessary to the performance of those functions demanded of it by the Legislature pursuant to the Juvenile Court Law.' (*Ibid.*)" (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622–1623 [267 Cal.Rptr. 746] (*Jody R.*).)

The purpose of dependency law "is twofold: to protect the welfare of children by the state acting as parens patriae; and to safeguard the parents' or guardians' rights to raise their children by providing services to help them overcome problems which created the need for a dependency adjudication." (*Jody R., supra,* 218 Cal.App.3d at p. 1623.) The implementation of these goals is achieved through the statutorily prescribed dependency procedures.

■ After a "[section 300] petition is sustained, the [juvenile] court proceeds to a disposition hearing. (§ 358.) If the child is adjudged a dependent, the court must then determine whether to remove the child from the custody of the parent or guardian. (§§ 361, 361.2, 361.3.) In addition, the court is required, in the majority of cases, to order the parent or guardian to participate in services designed to overcome the problems which created the need for the dependency. (§§ 361.2, subd. (a)(2); 361.5, subd. (a); 362, subd. (b).) If the child is removed from the custody of a parent or guardian, the court must, in most cases, order the parent or guardian to participate in a reunification plan. (§ 361.5.)" (*Jody R., supra,* 218 Cal.App.3d at p. 1623.)

The court's authorization to order participation in child welfare and reunification services is set forth in sections 361.2, 361.5, and 362. (See *Jody R., supra,* 218 Cal.App.3d at p. 1625.) Section 361.2, subdivision (a) directs the juvenile court, when applicable, to consider placing a dependent child who has been removed from his or her custodial parent with a noncustodial parent, and authorizes the court to order that reunification services be provided to either parent, or both. (§ 361.2, subd. (b)(3).)

Section 361.5 provides in relevant part: "[W]henever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians. Upon a finding and declaration of paternity . . . , the juvenile court may order services for the child and the biological father, if the court determines that the services will benefit the child." (§ 361.5, subd. (a).) "When counseling or other treatment services are ordered, the parent or guardian shall be ordered to participate in those

services, unless the parent's or guardian's participation is deemed by the court to be inappropriate or potentially detrimental to the child." (§ 361.5, subd. (a)(3).)

Section 362, subdivision (a) authorizes the juvenile court to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court." Section 362, subdivision (c) provides: "The juvenile court may direct any and all reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section . . . . That order may include a direction to participate in a counseling or education program, including, but not limited to, a parent education and parenting program . . . . A foster parent or relative with whom the child is placed may be directed to participate in such a program in cases in which the court deems participation is appropriate and in the child's best interest. The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."

Taken together, the plain meaning of these statutes limits the persons for whom reunification and welfare services may be ordered: parents and guardians of the dependent child may be ordered to participate in reunification and child welfare services; and foster parents and adult relatives with whom the child has been placed may be ordered to participate in certain designated services. (*Jody R., supra*, 218 Cal.App.3d at p. 1625.) This is the conclusion reached in *Jody R.*, where the court reviewed the foregoing statutes in the context of the juvenile court's forced joinder of a mother's live-in companion, in order to secure his compliance with counseling orders directed toward his physical abuse of the children, who had been declared dependents of the court. (*Id.* at pp. 1620–1621.) The court concluded that because the mother's live-in companion was not the parent, guardian, relative or foster parent of the children, the juvenile court had no authority to order his participation in reunification services. (*Id.* at p. 1626.) Accordingly, the court reversed the order joining the live-in companion as a party to the dependency proceedings. (*Id.* at p. 1630.)

Extended by analogy to the instant case, the holding of *Jody R.* would dictate that the juvenile court had no authority to order Stepfather and Kevin to participate in sexual abuse counseling. Neither Stepfather nor Kevin is a parent or guardian, and neither is a foster parent or adult relative with whom

Silvia has been placed. Respondent contends, however, that the holding in *Jody R.* is inapposite, as it involved a live-in companion rather than a stepparent. Respondent relies instead on the construction given to a portion of section 362, subdivision (c) by the court in *Venus B., supra*, 222 Cal.App.3d 931, to argue that the court here was authorized to make disposition orders directed toward Stepfather and Kevin.

The relevant portion of section 362, subdivision (c) states that "[a] foster parent or relative *with whom the child is placed* may be directed to participate in such a program in cases in which the court deems participation is appropriate and in the child's best interest." (Italics added.)[4] In *Venus B.*, the juvenile court ordered a mother and stepfather to participate in joint and individual counseling to address child sexual abuse. The mother and the stepfather appealed, contending that the court did not have jurisdiction to make the orders directed toward the stepfather. After recognizing the holding as to live-in companions reached by the court in *Jody R., supra*, 218 Cal.App.3d 1615, the court in *Venus B.* stated: "Whether or not Welfare and Institutions Code section 362, subdivision (c) applies to live-in companions, it clearly and explicitly applies to a '. . . relative with whom the child is placed . . . .' If family reunification takes place, the minor will be placed with her mother and stepfather; for the purposes of section 362, subdivision (c), we hold that both are 'relatives.' "[5] (*Venus B., supra*, 222 Cal.App.3d at p. 935, fn. omitted.) The court continued: "Given the purposes of the juvenile court law, we cannot imagine that the Legislature intended that stepfathers with whom the minor resides, and who were found to have abused their stepchildren, could in effect force the minor's parent to choose between the stepparent and the child rather than require counseling as a reasonable condition precedent to family reunification." (*Venus B., supra*, 222 Cal.App.3d at pp. 935–936.)

■ We disagree with the *Venus B.* court's interpretation of the relevant portion of section 362, subdivision (c), because it contradicts the unambiguous language of the statute and seeks to avoid an absurdity where none exists. "Our task in examining any enactment 'is to ascertain and effectuate legislative intent. [Citations.] We turn first to the words of the statute themselves, recognizing that "they generally provide the most reliable indicator of legislative intent." [Citations.] When the language of a statute is "clear and unambiguous" and thus not reasonably susceptible of more than one meaning, " ' " 'there is no need for construction, and courts should not indulge in

---

[4] The term "relative" is defined in various provisions of the dependency law to include a stepparent. (See, e.g., §§ 319, 361.3, 366.22; Cal. Rules of Court, rule 5.502.)

[5] In the footnote, the court "urge[d] the Legislature to clarify the language since many of the cases under Welfare and Institutions Code section 300 involve nonrelative companions of the minor's parent." (*Venus B., supra*, 222 Cal.App.3d at p. 935, fn. 2.)

it.' " ' " [Citations.]' (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713]; see *In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1510 [42 Cal.Rptr.3d 370] . . . .) When considering the statutory language, we adhere to the maxim that ' "[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." [Citation.]' (*Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) Where the terms of a statute are plain and not absurd, a court may not presume a drafting error and thereby substitute its judgment for the Legislature's. (*People v. Castro* (1985) 38 Cal.3d 301, 310 & fn. 6 [211 Cal.Rptr. 719, 696 P.2d 111].)" (*Joshua D. v. Superior Court* (2007) 157 Cal.App.4th 549, 557–558 [68 Cal.Rptr.3d 715].)

In short, "the words the Legislature chooses are the best expression of its intent and we are bound by their plain meaning. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54] [statute's 'plain meaning controls' and obviates 'resort to extrinsic sources to determine the Legislature's intent'].)" (*Joshua D. v. Superior Court, supra,* 157 Cal.App.4th at p. 560.) "[E]xcept in the most extreme cases where legislative intent and the underlying purpose are at odds with the plain language of the statute, an appellate court should exercise judicial restraint, stay its hand, and refrain from rewriting a statute to find an intent not expressed by the Legislature." (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1700 [8 Cal.Rptr.2d 614].)

As recognized in *In re Jodi B.* (1991) 227 Cal.App.3d 1322 [278 Cal.Rptr. 242] (*Jodi B.*) (albeit in dicta), *Venus B.* relies on a questionable reading of the phrase "foster parent or relative with whom the child is placed." In *Jodi B.*, the stepparent of a child placed in foster care contended on appeal that inadequate reunification services were provided to him. The appellate court first addressed the threshold issue whether he had a right to such services in the first place. (*Id.* at p. 1325.) The court concluded that a stepparent is not a "parent" for purposes of the requirement that, upon removal of a child from "a parent's or guardian's" custody, the juvenile court must order the provision of child welfare services to the child and the child's parents or guardians.[6] (§ 361.5, subd. (a).) "Accordingly, a stepparent has no

---

[6] The court noted that the dependency provisions of the Welfare and Institutions Code do not define the term "parent." (*Jodi B., supra,* 227 Cal.App.3d at p. 1326.) After surveying various statutes that do so in contexts outside of dependency proceedings, the court in *Jodi B.* concluded that the Legislature's practice is to explicitly define the terms "parent" and "child" "when it wishes to enlarge or restrict the ordinary meaning of those terms." (*Id.* at pp. 1327–1328.) " '[When] a word or phrase has a well-known and definite legal meaning it will be construed to have the same meaning when used in a statute.' [Citation.] We must therefore assume that in using the word 'parent' the Legislature intended to refer to a person upon whom that status has been legally conferred—that is, a natural or adoptive parent." (*Id.* at p. 1328.)

independent right to services designed to return the child to parental custody." (227 Cal.App.3d at p. 1329.)

The court expressed "no opinion of the result reached in *In re Venus B.*," noting that *Venus B.* "concerned the question of whether, pursuant to section 362, subdivision (c), a court may *order* an unwilling stepparent to participate in certain programs as part of a reunification plan," whereas in *Jodi B.* the issue was "whether such a person is entitled as a matter of right to participate in a reunification plan independent of the rights accorded to his or her spouse as the parent of the child." (*Jodi B., supra*, 227 Cal.App.3d at p. 1329.) However, the court nonetheless questioned the reasoning of *Venus B.*: "[A] fair reading of the provision on which the *In re Venus B.* holding is based demonstrates that it was intended to apply to 'a foster parent or relative with whom the minor is placed' *while removed from the home.* The sentence was not intended to apply to parents, since the previous sentence already granted the court authority to order parents and guardians to participate in such programs. We believe it extremely unlikely that the Legislature intended, as the *In re Venus B.* holding suggests, to deem 'family reunification' a placement with foster parents or relatives. We therefore find the reasoning of *In re Venus B.* questionable." (*Jodi B., supra*, 227 Cal.App.3d at p. 1329, fn. 5.)

We agree with *Jodi B.* By its plain meaning, section 362, subdivision (c), does not authorize the juvenile court to order relatives with whom the child is not placed to participate in counseling or education programs. Further, contrary to the assertion of *Venus B.*, it is not absurd to suppose that the Legislature would limit the persons to whom disposition orders may be directed, and focus reunification efforts on parents and guardians, i.e., those who possess a constitutionally protected interest in maintaining a parental relationship. As the court recognized in *Jody R.*, the problem leading to the dependency adjudication at issue there was the mother's failure to protect her children from the inappropriate conduct of her live-in companion. "The Legislature may have concluded that this problem is resolved more effectively by placing the burden where it belongs, on parents or guardians to recognize when the safety and well-being of their children are being jeopardized and to take appropriate action to protect them. While providing services designed to correct a live-in companion's behavior may resolve the immediate problem which brings a case to the attention of DSS, the Legislature may have concluded that the provision of such services does not necessarily resolve the fundamental problem of a parent or guardian not having the desire or fortitude to take steps necessary to protect their children. Stated another way, the Legislature may have concluded that placing the custodial parent in jeopardy of an order excluding the live-in companion is the best way to protect dependent children." (*Jody R., supra*, 218 Cal.App.3d at p. 1629.)

■ The Legislature specifically authorized the juvenile court to make such an order conditioning physical custody either on the parent's excluding from his or her household the offending parent, or on the nonoffending parent's presenting a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm. That is, section 361 requires the juvenile court, before removing a dependent child from parental custody, to find by clear and convincing evidence that there is substantial danger to the physical or emotional well-being of a child if he or she were returned home, and that there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. In so doing, "[t]he court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody *as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm.*" (§ 361, subd. (c)(1), italics added.)

The fundamental problem leading to assumption of juvenile court jurisdiction, and to which reunification efforts are properly directed in cases such as the one before us, is that a parent or guardian lacks the desire, fortitude, or ability to take steps necessary to protect his or her children. Thus, the juvenile court properly directs the disposition plan toward the parent or guardian involved, and requires the parent or guardian to demonstrate the ability to protect the child from future harm before considering return of the child to parental custody. Simply put, a court may compel a mother to choose between her child and an offending stepparent, where the offending stepparent refuses to comply voluntarily with efforts designed to protect the children. (See *Jody R., supra*, 218 Cal.App.3d at p. 1629.)

■ In the instant case, the juvenile court has jurisdiction to impose on Mother, as a condition of her disposition plan for reunification with Silvia, that Mother demonstrate to the court's satisfaction that she can protect Silvia. (§ 361, subd. (c)(1).) The court may order that the only way Mother can do so is to reside separately from Stepfather and Kevin, or to demonstrate to the court that Stepfather and Kevin voluntarily participated in counseling and satisfactorily addressed the issues involved, such that Silvia could safely reside with them. The court does not, however, have jurisdiction to directly order Stepfather and Kevin, with whom Silvia was not placed, to participate in counseling.

## DISPOSITION

The disposition order is reversed to the extent it directed Stepfather and Kevin to participate in counseling and other programs. In all other respects, the disposition order is affirmed in full.

Epstein, P. J., and Suzukawa, J., concurred.