[No. G040284. Fourth Dist., Div. Three. July 31, 2008.]

DAVID L. et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties in
Interest.

**COUNSEL**

Juvenile Defenders and Donna P. Chirco for Petitioner David L.

Deborah A. Kwast, Public Defender, Frank Ospino, Assistant Public Defender, Geraldine Wong and Paul DeQuattro, Deputy Public Defenders, for Petitioner Tina L.

Benjamin P. de Mayo, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Rebecca N. Captain for Real Party in Interest Minor's Guardian.

Law Office of Harold LaFlamme and April Kleis for Minor.

**OPINION**

**ARONSON, Acting P. J.**—David L. (father) challenges the juvenile court's order setting a new permanent plan selection and implementation hearing (.26 hearing; see Welf. & Inst. Code, § 366.26; all further unlabeled statutory references are to this code), after now seven-year-old Naomi L. had been

under her maternal grandmother's guardianship for more than a year. Father contends the juvenile court erred by not requiring Orange County Social Services Agency (SSA) or Ruby K. (grandmother) to file a section 388 modification petition seeking the new .26 hearing. Father also argues the juvenile court erred by utilizing a prima facie rather than preponderance of the evidence standard in determining whether to set the new hearing. Tina L. (mother) similarly filed a separate writ petition and joins in father's contentions.

■ Following *In re Andrea R.* (1999) 75 Cal.App.4th 1093 [89 Cal.Rptr.2d 664] (*Andrea R.*), we conclude father's arguments are without merit because section 366.3, which provides for a new .26 hearing for children under guardianship, does not require a modification petition. Nor does it require the juvenile court to employ the preponderance standard. Accordingly, we deny the writ petitions and the parents' request that we stay the pending .26 hearing.

I

FACTUAL AND PROCEDURAL BACKGROUND

Westminster police detained three-year-old Naomi in August 2004 after an altercation in which father grabbed mother, mother threatened father with a knife, and father screamed, "Go ahead and cut me." The juvenile court sustained jurisdiction over Naomi based on father and mother's failure to protect her from severe emotional distress caused by their domestic violence, and father's unresolved marijuana substance abuse problem. (§ 300, subd. (b).) SSA placed Naomi with grandmother. By late March 2005, father and mother had progressed sufficiently in reunification services to warrant a 60-day trial in-home visit with Naomi, which went well. Although father attended his domestic violence course only reluctantly and continued to minimize the incident precipitating Naomi's removal, the juvenile court concluded Naomi was safe in her parents' care and returned her to their custody under family maintenance supervision in May 2005.

Mother separated from father in October 2005. Her contacts with Naomi were restricted to monitored visitation after she allowed Naomi to spend time with her new boyfriend, who had an extensive criminal record that included a felony conviction for sexual intercourse with a minor. Mother moved back in with father when her boyfriend returned to jail. She and father resumed their

stormy pattern of violence in the home, including further domestic violence arrests and incidents in which mother bloodied father's lip and threatened him with a butcher knife, eventually relinquishing the knife but leaving it within Naomi's reach. Mother attempted suicide in the home in late March 2006 and again in early April in Naomi's presence. When father and Naomi took mother to the hospital after her second suicide attempt, hospital staff observed that father "appeared to be under the influence of drugs and was not making sense." Upon redetaining Naomi, a social worker transported her to the hospital to treat her for dehydration and vomiting. The nursing staff observed that the child was extremely emotional, which may have instigated her vomiting, and also noted that at a mere 34 pounds at age five, Naomi's weight was far below average.

Father and mother pleaded no contest to SSA's allegations of general neglect in a supplemental petition, and the juvenile court placed Naomi again with grandmother, recognizing her as the child's de facto parent.[1] Among all her relatives, Naomi only wanted to stay with grandmother, and did not want to return to father or mother. Naomi enjoyed visits with her parents, but called grandmother "my Mom" and wanted to live with her permanently. Based on SSA's recommendation that the court place Naomi under grandmother's care, father and mother stipulated to the setting of a .26 hearing. In February 2007, pursuant to the parties' stipulation, the juvenile court appointed grandmother as Naomi's legal guardian, with weekly visitation for father and mother.

By September 2007, Naomi had been in grandmother's care for more than a year, and the social worker changed her recommendation to favor adoption as Naomi's permanent plan. Naomi had told the worker on several occasions that she wanted grandmother's home to be her "forever" home. The social worker concluded that terminating parental rights would not be detrimental to Naomi because her visits with the parents resembled "three six-year-old children playing together" rather than true parent-child interactions.

In February 2008, grandmother explained to the social worker that she always had been interested in adoption but agreed to the guardianship instead because she was concerned about the effect extended legal proceedings would have on Naomi. The bond between the two having deepened, grandmother came to believe that guardianship did not provide " 'enough peace for Naomi' " and that adoption would allay "any fears the child might have of being removed or having a change of placement." When the social worker

---

[1] A de facto parent is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of [a] parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 5.502(10).)

explained the adoption process to Naomi, Naomi reiterated she wanted to stay in grandmother's care. She preferred to continue to have visits with father and mother, but would give those up if necessary to remain with grandmother.

The juvenile court ordered a hearing on whether to set a new .26 hearing. The social worker explained the reasons for her change in recommendation, including Naomi's desire to remain in grandmother's care "forever." Father testified Naomi had expressed interest in having more visits with him, and noted he and mother had been reunited for about two years, with no recent episodes of domestic violence. The juvenile court concluded SSA had presented a prima facie case warranting a new .26 hearing and accordingly set the hearing for August 2008, a decision father and mother now challenge in this writ proceeding.

## II

## DISCUSSION

Father contends the juvenile court exceeded its authority by setting a new .26 hearing without first receiving a section 388 modification petition. The juvenile court set the new hearing under section 366.3, subdivision (c), which provides: "If, following the establishment of a legal guardianship, the county welfare department becomes aware of changed circumstances that indicate adoption may be an appropriate plan for the child, the department shall so notify the court. The court may . . . order that a hearing be held pursuant to [s]ection 366.26 to determine whether adoption or continued legal guardianship is the most appropriate plan for the child."

■ No modification petition was necessary. In *Andrea R., supra,* 75 Cal.App.4th at page 1106, the court explained: "To the extent that appellants contend that preliminary to a new section 366.26 hearing under section 366.3, subdivision (c), there must be a separate noticed hearing upon a section 388 petition on the issue of whether there are sufficient changed circumstances to warrant setting the section 366.26 hearing in the first instance, we conclude that no appropriate authority is cited to support such a procedural requirement and the language of section 366.3, subdivision (c), does not on its face require such a judicial finding or separate evidentiary hearing." We agree with *Andrea R.* The language of section 366.3, subdivision (c), is clear and unambiguous on its face: no section 388 petition is necessary; rather, the

juvenile court "may" set a new .26 hearing at its discretion. (See *In re Silvia R.* (2008) 159 Cal.App.4th 337, 348–349 [71 Cal.Rptr.3d 496] [plain terms of a statute preclude judicial construction]; see also *Lewis v. Clarke* (2003) 108 Cal.App.4th 563, 569 [133 Cal.Rptr.2d 749] [" 'May' ordinarily is construed as permissive, that is, a grant of discretion . . . ."].)

Unlike the appellants in *Andrea R.*, who cited no authority for their position, father relies on California Rules of Court, rule 5.740(c), which specifies that a petition to terminate a guardianship requires a section 388 modification petition. The flaw in father's argument is that no party filed a petition to terminate Naomi's guardianship. Moreover, from the dependent child's perspective, a petition to terminate a guardianship functioning as well as grandmother's here bears no resemblance to a .26 hearing set under section 366.3, subdivision (c), to ascertain whether adoption has become an appropriate permanent plan. The former potentially upsets the child's stability, while the latter aims to safeguard and increase it through the permanency of adoption.

■ Accordingly, the Legislature has specified strict procedures, including the necessity of a section 388 modification petition, to mitigate or prevent destabilization when a party seeks to terminate a guardianship. (§ 366.3, subd. (b); Cal. Rules of Court, rule 5.740(c).) In contrast, as *Andrea R.* observed, "[Inasmuch] as the juvenile court is subject to the mandatory preference for adoption over legal guardianship [citation], . . . section 366.3, subdivision (c), permits the court"—unencumbered by the necessity of a modification petition—"to more readily hold a new section 366.26 hearing to determine whether adoption or continued guardianship is the most appropriate plan." (*Andrea R., supra*, 75 Cal.App.4th at p. 1107; accord, *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888–889 [55 Cal.Rptr.2d 396, 919 P.2d 1329] (*San Diego County*) [no modification petition necessary for court to set .26 hearing for child in long-term foster care].)

■ Father attempts to distinguish *San Diego County* on grounds that the periodic judicial reviews necessary for children in long-term foster care (§ 366.3, subd. (d)) may support a low threshold for new .26 hearings for those children, to speed them into more stable placements, but no such regularly scheduled reviews are required for children under guardianship. Father therefore suggests children under guardianship, like Naomi, should face a higher bar to a new .26 hearing. But like *Andrea R.*, we perceive in section 366.3, subdivision (c), no basis to discriminate between children in long-term foster care and those under guardianship, since the legislative preference for the permanency and stability of adoption applies equally to all dependent children. (§ 366.26, subd. (b)(1); see, e.g., *In re Jasmine D.* (2000)

78 Cal.App.4th 1339, 1348 [93 Cal.Rptr.2d 644]; accord, *Andrea R., supra,* 75 Cal.App.4th at p. 1106.) Consequently, children under guardianship should not be subject to the necessity of a modification petition when the Supreme Court has determined children in long-term foster care are not.

Additionally, we note father's premise in distinguishing *San Diego County* is mistaken: children under guardianship *are* subject to regular review hearings. By providing for review hearings as frequently as required by the children's best interests (see § 366.3, subd. (j)), the Legislature has indicated the juvenile court must readily explore adoption opportunities for children under guardianship. In sum, father's efforts to distinguish *Andrea R.* and *San Diego County* are without merit.

Father also argues the juvenile court erred in utilizing a prima facie standard, instead of preponderance of the evidence, to determine whether to set the new .26 hearing. The language of section 366.3, subdivision (c), supports the prima facie standard, since the county welfare department need only "notify" the juvenile court of changed circumstances, not prove them. The lower standard is also consistent with the Legislature's preference for adoption because it more "readily" facilitates consideration of that option. (*San Diego County, supra,* 13 Cal.4th at p. 890; see *Andrea R., supra,* 75 Cal.App.4th at p. 1106.)

■ We see no reason to require, as father advocates, the more exacting preponderance standard to protect parental interests; under section 366.3, the juvenile court adjudicates no rights but only decides whether to *set* a .26 hearing. The merits of that hearing remain for future determination; merely setting the hearing does not tip the scales for or against the parent on the merits. In any event, once the court terminates reunification services, "the child's interest in stability is the court's foremost concern, outweighing the parent's interest in reunification." (*In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1348 [34 Cal.Rptr.3d 344].) Consequently, father's insistence on the standard more solicitous of parental rights is unpersuasive.

■ Here, we have no difficulty concluding prima facie evidence supported the juvenile court's decision to set a .26 hearing. On learning of SSA's concern that the guardianship did not provide " 'enough peace for Naomi' " because Naomi feared she would be removed from grandmother's care, and of grandmother's new commitment to adoption, the juvenile court properly set a .26 hearing to consider whether the permanency of adoption would serve Naomi's best interests.

## III

## DISPOSITION

Father's and mother's writ petitions and their request for a stay of the .26 hearing are denied.

Fybel, J., and Ikola, J., concurred.