Filed 1/18/24  In re E.T. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re E.T. et al., Persons Coming Under the Juvenile Court Law. | B325450 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Superior Court No. 22CCJP03784C-D |
| Plaintiff and Respondent, | |
| v. | |
| I.T., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

Four children became dependents in this case. The father of the two youngest children levels numerous attacks at the jurisdictional findings and dispositional orders pertaining to him and his children. We affirm. Statutory references are to the Welfare and Institutions Code.

In September 2022, the Los Angeles County Department of Children and Family Services filed a dependency petition on behalf of the four children. The children, and their ages as of this filing, are Kevin (age 16), Bridget (age 11), Esmeralda (age six), and Perla (age two). The last two are the father's biological children.

The petition asserted varied grounds for jurisdiction and pointed to conduct of the father, the mother, and the father of the two oldest children. We do not discuss this third parent further. This conduct included physical abuse of the two oldest children by the father and the mother, domestic violence between the parents, mental and emotional problems of the mother, substance abuse by both parents, and related failure to protect allegations.

In November 2022, the juvenile court sustained the bulk of the allegations, declared the children dependents, removed them from parental custody after finding both parents to be custodial, and ordered reunification services.

Only the father appeals.

We reach the father's jurisdictional challenges, despite the existence of unchallenged findings concerning the mother, because the findings paved the way for the challenged dispositional orders and continue to affect the father's parental rights. (See *In re D.P.* (2023) 14 Cal.5th 266, 276–278, 282–285; *In re L.O.* (2021) 67 Cal.App.5th 227, 237–238 (*L.O.*).)

2

## I

Typically, we review jurisdictional findings for substantial evidence, drawing all reasonable inferences from the evidence to support the findings and reviewing the record in the light most favorable to the juvenile court's determinations. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Instead of attacking each jurisdictional finding separately, the father groups his challenges by category. We address each challenge in turn, independently reviewing the statutory construction issues the father raises.

## A

The father argues the juvenile court lacked jurisdiction to make findings that he physically abused the two oldest children and exposed one of them to domestic violence (counts a-6, b-3, b-4, b-8, j-2, and j-3). He is not a parent or guardian of these children under section 300, the father maintains, and he is not a party to their case, so the court could not use this conduct as a basis for asserting jurisdiction.

This argument is mistaken. We highlight the child abuse counts here and discuss the domestic violence counts further in the next section.

The father regarded the two oldest children as his biological children, yet the evidence shows this bond did not stop him from abusing them. These children credibly recounted the abuse the father inflicted with his hands, his belt, his sandal, and other objects, and the marks he left on their bodies.

Esmeralda witnessed the father hit her siblings. And the maternal grandmother reported the father would hit the older children in front of the mother, who allowed it.

The juvenile court reasonably could conclude the father's conduct—his violence with the two oldest children and with the mother in their presence—showed *all* the children were at a substantial risk of serious harm. Six-year-old Esmeralda already reported the father had hit her too. The mother's failure to protect some of her children from the father's physical abuse additionally showed all four children needed the court's protection.

The father cites *In re Silvia R.* (2008) 159 Cal.App.4th 337, which does not help him. This case considered whether a juvenile court could order nonparent relatives to counseling as part of the disposition. (*Id.* at pp. 341 & 345.) That is not the issue here.

B

The father argues these same findings must be reversed for lack of a current risk, as he had separated from the mother months before the jurisdiction hearing, and he was no longer involved in the mother's household or in custody issues regarding the two oldest children.

We incorporate our earlier discussion of the father's child abuse here. As for the domestic violence counts, the record shows the parents attacked and injured each other multiple times. For example, police arrested the mother in March 2022 for punching and scratching the father. At times, the father was the batterer. Some of the violence occurred in Bridget's presence.

The juvenile court reasonably could conclude the risk to the children remained despite the father's moving out of the family home. Indeed, the violence continued after his move: In July 2022, two or so months into the parents' separation, hospital staff witnessed the mother jump on the father and punch him while Esmeralda was admitted there. Yet the father minimized this

4

incident and denied any history of domestic violence. He also denied abusing the two oldest children.

The father's denials, the parents' continued violence, and their need to continue interacting while separated due to the two youngest children reasonably could lead the juvenile court to expect more violence and an associated risk of serious physical harm to the children. (See § 300, subd. (b); *L.O.*, *supra*, 67 Cal.App.5th at p. 240; see also *id.* at p. 238 [past violent behavior in a relationship is best predictor of future violence]; *In re V.L.* (2020) 54 Cal.App.5th 147, 156 (*V.L.*) ["A parent's denial of domestic violence increases the risk of it recurring"].)

C

The father argues the remaining failure to protect counts concerning the mother's mental health and both parents' substance abuse (counts b-1, b-2, b-9) must be dismissed because they are based on an error of law. The argument is section 300, subdivision (b)(2), says jurisdiction cannot be premised on a parent's failure to seek custody orders, and that is what happened here.

Contrary to the father's arguments, which he did not make to the juvenile court, we need not employ any canon of statutory construction to decide this issue. The challenged findings concern the father's failure to intervene to protect the children from the mother, or his own inappropriate behavior, not any inaction regarding custody orders.

For example, the record shows the mother suffered from untreated mental health issues, including paranoid thinking and hallucinations. According to the maternal grandmother, the mother had a diagnosis of schizophrenia. The mother reportedly would lock herself and the two youngest children in her car and

5

wake up the children in the middle of the night to walk outside. She at one point believed the father had molested both of his daughters and claimed to have a recording of the inappropriate touching; but the video showed nothing. The mother also believed that her son helped the father meet another woman in the family home, that her 11-year-old daughter was sleeping with the mother's then boyfriend, and that the son and the father had a sexual relationship. She threatened to kill various people in the family or close to it, including her son. Family members were concerned about the mother's mental health. At one point, the father was concerned, too: he reported she was acting strange and exhibiting paranoia.

According to the father, he called police when the mother was suffering a mental breakdown and assaulted him in March 2022; later he ended his relationship with her. But it seems he took no further steps to intervene on his children's behalf and voiced no plans to take further steps as of the jurisdictional hearing. Shortly before the hearing, he denied the mother had mental health or substance abuse issues. When a social worker told him some of the allegations regarding the mother's mental health, the father said he did not believe the allegations.

The failure to protect rulings concerned action or inaction by the father that created, or failed to remove, a serious risk to the children. The rulings did not turn on any failure to seek custody orders.

D

The father claims the substance abuse allegations (b-2 and b-9) cannot give rise to jurisdiction because the record shows nothing more than legal recreational marijuana use by both

6

parents that did not harm the children.  This claim also is mistaken.

The mother had a history of methamphetamine use, which led to an earlier dependency proceeding involving the two oldest children.  In 2022, she tested positive for marijuana multiple times.  The father also tested positive for marijuana.  He had two relatively old convictions for drug possession and for being under the influence of drugs.  Yet he denied ever using drugs or alcohol—until later in the Department's investigation, when he conceded recreational marijuana use.

The maternal grandmother reported both parents smoked marijuana daily.  She and the children could smell it.  She found marijuana inside the mother's home when the parents lived together.

Bridget similarly reported her mother smoked marijuana every day, sometimes in Bridget's presence and in the house, and despite Bridget's asthma.  The girl had noticed her mother "partying more" after meeting the father.  She described the smell of marijuana and having seen her mother come home drunk, including one time when her mother "threw up everywhere."  Bridget observed her mother smoking from the "glass thing" inside the house with friends; the mother would put "green stuff" in the hole and then "fire it up" and put her mouth on the contraption to suck it.

The maternal grandmother, the two oldest children, and other family members believed the mother was using drugs.  The mother told police she was using meth around the beginning of 2022.  She made a similar confession to the maternal aunt, saying she had used meth every day for about one month.  The

maternal grandmother felt the mother's drug use caused mood changes.

According to Bridget and a maternal aunt, the father was aware of the mother's drug use. Bridget noted the father "smokes and parties" too. Kevin and the mother said the father smoked marijuana daily when the parents were together. Kevin also said the father would "drink alcohol until he was drunk" when he lived with them. Sometimes the father would come home drunk and hit Kevin.

Jurisdiction did not hinge on the parents' marijuana use alone. The juvenile court reasonably could infer the parents' substance use amounted to abuse that was tied to other jurisdictional findings and that played a role in how the parents treated the children. For example, it would be reasonable to conclude from the evidence that the mother's substance abuse exacerbated her mental health issues. Indeed, hospital staff suspected the mother was under the influence when she attacked the father in July 2022. And the father believed the mother was under the influence of some unknown substance when she attacked him in March 2022 and when she attempted to drive that night.

Given the father's dishonesty on this issue, the juvenile court reasonably could conclude the father's drug use was more extensive than he reported.

Considering the totality of the circumstances and drawing all inferences in favor of the juvenile court's findings, substantial evidence underlies the court's conclusion the parents' substance abuse, and the father's failure to protect the children from the mother's abuse, supported jurisdiction under section 300, subdivision (b). Esmeralda's and Perla's young ages and

concomitant need for close care and supervision bolster this conclusion.

Finally, jurisdiction is proper even if the parents' conduct had yet to injure the children seriously and even if the court could not predict precisely how the conduct might harm them. (*L.O.*, *supra*, 67 Cal.App.5th at p. 238; *In re Travis C.* (2017) 13 Cal.App.5th 1219, 1226–1227.)

II

Turning to disposition, dispositional orders require clear and convincing evidence at the juvenile court. (§ 361, subd. (c) & (d).) Thus, when considering the grounds for removal on appeal, we look for substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. (*V.L.*, *supra*, 54 Cal.App.5th at pp. 149, 154–155.)

Father mounts two challenges to the disposition: he claims insufficient evidence supports it, and the juvenile court erroneously ignored his noncustodial status. Both claims fail.

In addition to the evidence described above, substantial evidence showed the mother would hit her children, and the father knew it. Sometimes the mother used a belt. Bridget said her mother would make her wear long sleeves, pants, and socks to hide the bruises. Kevin also reported suffering injuries from the mother's blows. The maternal grandmother said the father would "target" the two oldest children *jointly with the mother*.

From all of the evidence outlined above, a reasonable trier of fact could have found it highly probable the children would be at risk of serious harm if returned to their parents' care, and no reasonable means short of removal could protect them. (See *V.L.*, *supra*, 54 Cal.App.5th at pp. 156–157.) This is true even though the parents had separated, for the reasons we explained above.

The father's denial of any wrongdoing signaled that he lacked the willingness or ability to change his behavior and that alternatives to removal—or remedial measures to enable placement of the children with him—would be ineffective.

The father says we must reverse the disposition because he was a noncustodial parent entitled to custody of his children under section 361.2, which governs placement with noncustodial parents. The father forfeited this argument by failing to raise it at the trial court. His counsel did not object at the hearing when the juvenile court explicitly found both parents were custodial.

Even on appeal, the father has not shown section 361.2 applies. The section only comes into play where "there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." (§ 361.2, subd. (a).) Here, many of the events giving rise to jurisdiction occurred while the family lived together and thus when the father was a custodial parent to his children.

Further, it was unclear whether the father sought physical custody of his children as of the disposition hearing. At this hearing, the father's counsel stated the father "would like to ask for the younger two children be released back to both parents, with them continuing to reside with the mother and the maternal grandmother in the home that they've been. . . . His main priority is for them to stay where they are. [¶] He would like them released to both parents so that they can continue to have custody over them, . . ." Counsel then said the father would submit to "suitable placement," presumably with the maternal grandmother, "as suitable placement also allows for the children

10

to stay where they are, which is the father's ultimate priority. But he does love his daughters very much and would like them back in his care, and so that is his request today."

In light of these contradictory statements, it would be reasonable to conclude the father was not seeking to have the children placed with him.

## DISPOSITION

We affirm the jurisdictional findings and dispositional orders.

WILEY, J.

We concur:

STRATTON, P. J.

GRIMES, J.

11