227 Cal.App.3d 1322 (1991)
278 Cal. Rptr. 242
In re JODI B., a Person Coming Under the Juvenile Court Law.
PEDRO SILVA, as Chief Probation Officer, etc., Plaintiff and Respondent,
v.
JAMES P., Defendant and Appellant.
Docket No. H006196.
Court of Appeals of California, Sixth District.
January 30, 1991.
*1323 COUNSEL
Frieda Jo Molnar, under appointment by the Court of Appeal, for Defendant and Appellant.
Steven M. Woodside, County Counsel, and Vanessa A. Zecher, Deputy County Counsel, for Plaintiff and Respondent.
Leo Himmelsbach, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minor.
OPINION
PREMO, J.
In this appeal a stepparent seeks to challenge a permanency planning order by the juvenile court (Welf. & Inst. Code, § 366.25) on the *1324 ground that he was not afforded adequate reunification services. We will hold that a stepparent is not a "parent" for purposes of juvenile dependency proceedings, and therefore is not entitled as of right to a reunification plan designed to facilitate return of the child to parental custody. Accordingly, the question of the adequacy of reunification services is a moot one, which renders the instant appeal subject to dismissal.

BACKGROUND
Jodi B., age 12 at the time of the order, is the oldest of 4 children. Their mother, Dianna P., is not a party to this appeal. Appellant James P. is the natural father of only the three younger children, Jamie, Brandi, and Cathy; however, Jodi has lived with him and Dianna since her birth.
The minors were all made dependents of the court in November 1987, after the court sustained a petition alleging extreme family conflict and previous sexual molestation of the three older children. A service plan for appellant and Dianna required them to engage in individual and marital psychotherapy, successfully complete a parenting class, secure stable employment, maintain a home in the same location for at least six months, visit at least weekly with the children, and refrain from alcohol and drug use. In addition, they were ordered to undergo a psychological evaluation, which concluded that "neither James nor Dianna [P.] has the capacity or the emotional stability to effectively parent these children."
In May 1988, dependency was continued and a second psychological evaluation was ordered to determine whether either Dianna or appellant was capable of parenting appropriately. That question was answered in the negative for both parents in a report submitted in August 1988. Accordingly, it was recommended that the children not be returned to the custody of either Dianna or James. A separate assessment of Jodi resulted in a recommendation of long-term foster care for her.
In May and June 1989, the court held a permanency planning hearing regarding all four children. The court heard testimony from the social worker, the three older children, three psychologists who had examined the P.'s, the minors' child advocate, and appellant. At the conclusion of the hearing, the court found that return of the children to the P.'s would be detrimental to their physical and emotional well-being. In particular, the court found: "First, that the plans for reunification that have been set up and have been attempted have failed; that the parents do not have the ability or the capacity to parent these children and will not have the ability and capacity in the future; that because of the children's background and upbringing, they are special-needs children and that continued attempts at *1325 reunification will be detrimental to them in light of the fact that reunification is not possible...." Accordingly, Brandi and Jamie were referred for institution of guardianship proceedings; Cathy was referred for initiation of proceedings to terminate parental rights pursuant to Civil Code section 232; and Jodi was ordered into long-term relative or foster care, with placement preferably to be in her current foster home. The court further authorized visitation by the P.'s with all of the children except Cathy.
Appellant filed an appeal of these orders as to all four children, claiming inadequate reunification services. As to Brandi, Jamie, and Cathy, this court dismissed the appeal on August 14, 1990, pursuant to Welfare and Institutions Code section 366.25, subdivision (j). A petition for review of the order of dismissal was denied by the Supreme Court on October 22, 1990. We therefore confine our discussion to appellant's contentions as they relate to Jodi.

DISCUSSION
(1a) Appellant's primary contention on appeal is that inadequate reunification services were provided to him and Dianna. Before we can reach this issue, however, we must consider the threshold question of whether appellant, as Jodi's stepfather, had a right to such services in the first place.
Respondent minor, joined by the chief probation officer, argues that the juvenile court lacked authority to order reunification services for appellant since he is not Jodi's parent and has no right to custody of the minor for purposes of juvenile dependency proceedings. Respondents point out that the purpose of such services is to facilitate return of custody to a "parent or guardian" of the minor. (Welf. & Inst. Code, §§ 361.5, 366.2, 366.21.)[1] Since appellant has not been accorded the legal status of parent or guardian, he had no right to custody, and therefore had no right to reunification services.
Appellant responds that he is Jodi's parent, as that term is "commonly understood," by virtue of a parent-child relationship "by affinity."[2] Appellant further argues, citing In re Venus B. (1990) 222 Cal. App.3d 931 [272 Cal. Rptr. 115], that he is a "relative" within the meaning of section 362, *1326 subdivision (c)[3] and was therefore entitled to participate in efforts to reunify the family.
Subject to certain exceptions enumerated in subdivision (b) of section 361.5, subdivision (a) requires that upon removal of a minor from "a parent's or guardian's" custody the juvenile court order the probation officer to provide child welfare services "to the minor and the minor's parents or guardians" in order to facilitate reunification of the family within 12 months. (Italics added.) In addition, before parental rights may be terminated pursuant to Civil Code section 232, subdivision (a)(7), the court must find that "reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody...." (Italics added.)
Clearly the purpose of reunification services is to facilitate the return of a dependent child to parental custody. If appellant, as a stepparent, is not a "parent" within the meaning of these provisions, then the legislative objective of returning the minor to parental custody has no application to him, and a requirement that child welfare services be provided to him would serve no purpose.[4] We therefore must consider whether appellant, the minor's stepfather, is a "parent" within the meaning of California's juvenile dependency law.
The dependency provisions of the Welfare and Institutions Code do not define "parent" or "parental custody." Black's Law Dictionary (6th ed. 1990) page 1114, defines a "parent" as "[t]he lawful father or mother of a person." The term includes the natural mother and father of a child born of their marriage, an adoptive father or mother, a natural mother of an illegitimate child, and, under some circumstances, a father of an illegitimate child if the status of father has been judicially conferred upon him. (See, e.g., Civ. Code, § 7017 [criteria for identifying father for notification purposes in adoption proceedings].)
*1327 In some contexts outside of dependency proceedings, California statutes explicitly define the term "parent," particularly where they expand the scope of reference to persons other than biological or adoptive parents. For example, under the Probate Code, "`[p]arent' means any individual entitled to take as a parent under this code by intestate succession from the child whose relationship is involved." (Prob. Code, § 54.) The Probate Code specifically excludes stepparents from this class unless a parent-child relationship had been established pursuant to Probate Code section 6408. To establish a parent-child relationship according to that section, the relationship between stepparent and child must have begun during the child's minority and continued throughout the parties' joint lifetimes, and it must be proven by clear and convincing evidence that the stepparent would have adopted the person but for a legal barrier. (Prob. Code, § 6408, subd. (b).)
Other statutes provide different degrees of restrictiveness depending on their purposes. Government Code section 31844, for example, defines "parent" as the "father or mother of the deceased member" for purposes of establishing survivor's allowances in county retirement systems. Under the Uniform Civil Liability for Support Act, "parent" includes "either a natural parent or an adoptive parent." (Civ. Code, § 241.) For purposes of determining eligibility for Aid to Families with Dependent Children, an "unemployed parent" is limited to a "natural or adoptive parent with whom the child is living." (§ 11201.) The provisions of the Revenue and Taxation Code governing transfers of property between parents and children, on the other hand, include as "children" any stepchild while the legal relationship of stepparent and stepchild exists.
Certain sections of the Educational Code also reach a broader class of persons referred to as "parent." (E.g., Ed. Code, § 8208, subd. (v): "any person living with a child who has responsibility for the care and welfare of the child" [regulation of child care and development programs]; Ed. Code, § 15502, subd. (j): term "includes legal guardian or other person standing in loco parentis" [school construction projects]; Ed. Code, § 22137: "`Parent' means a natural parent ... or a parent who adopted the member prior to his attainment of 18 years of age or to the member's marriage, whichever occurs earlier" [state teacher's retirement system]; Ed. Code, § 68014: parent is "the parent with whom the minor resides; or, if both parents are deceased, his or her legal guardian" [student residency classification].) In child abuse prevention programs an even broader definition of "parent" is provided, including "any person who exercises care, custody and control of the child as established by law." (§ 18951, subd. (f).)
These sections illustrate the Legislature's practice of specifying the intended meaning of "parent" and "child" when it wishes to enlarge or *1328 restrict the ordinary meaning of those terms. In juvenile dependency statutes, on the other hand, no explanatory or qualifying language accompanies the use of these terms. (2) "[When] a word or phrase has a well-known and definite legal meaning it will be construed to have the same meaning when used in a statute." (Plotitsa v. Superior Court (1983) 140 Cal. App.3d 755, 762 [189 Cal. Rptr. 769].) (1b) We must therefore assume that in using the word "parent" the Legislature intended to refer to a person upon whom that status has been legally conferred  that is, a natural or adoptive parent. (3) In construing statutory provisions, a court may not speculate that the Legislature meant something other than what it said or rewrite a statute to make it express an intention not expressed therein. (Mutual Life Ins. Co. v. City of Los Angeles (1990) 50 Cal.3d 402, 412 [267 Cal. Rptr. 589, 787 P.2d 996].) (1c) If the Legislature had intended to include stepparents in the class of persons denoted as parents for reunification purposes, it would have said so.
The policies underlying child protection statutes support such an interpretation. As our Supreme Court has stated in the context of parental termination proceedings, "`The relationship of natural parent ... [and] children is a vital human relationship which has far-reaching implications for the growth and development of the child.... Thus, the involuntary termination of that relationship by state action must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment.'" (In re Carmaleta B. (1978) 21 Cal.3d 482, 489 [146 Cal. Rptr. 623, 579 P.2d 514], italics added.) "[T]he very essence of the proceeding is the complete and final legal termination of a relationship which is biological in nature and most personal in form." (In re Angelia P. (1981) 28 Cal.3d 908, 915-916 [171 Cal. Rptr. 637, 623 P.2d 198].) Thus, the parental rights that receive protection in this state are derived from judicial recognition of "natural familial relationships." (Id. at p. 916.)
Likewise, adopted children and their adoptive parents are considered by law to bear "the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation." (Civ. Code, § 228.) No such fundamental bond is recognized, on the other hand, in the stepparent-stepchild relationship.
(4) The status of stepparent arises solely as a result of the marriage of that person to the natural parent. (Adoption of Bird (1960) 183 Cal. App.2d 140, 147 [6 Cal. Rptr. 675].) A stepparent bears no legal obligation to contribute directly to the support of the child (see former Civ. Code, § 4721, subd. (e) [Stats. 1988, ch. 153, § 3, No. 4 West's Cal. Legis Service p. 476 (No. 2 Deerings Adv. Legis. Service p. 679)] now Civ. Code § 4721, subd. (a)(5); In re Marriage of Nolte (1987) 191 Cal. App.3d 966, 973-974 [236 *1329 Cal. Rptr. 706]), and upon the termination of the marriage the stepparent-stepchild relationship ceases. (1d) We find it inconceivable that the Legislature intended that fundamental parenting rights attach to one who is not bound to the child either biologically or by securing the legally recognized status of parent and child through formal adoption.
In short, we conclude that a stepparent is not a "parent" for purposes of reunification of a child removed from the home in the course of section 300 proceedings. Accordingly, a stepparent has no independent right to services designed to return the child to parental custody.
In so holding, we express no opinion of the result reached in In re Venus B., supra, on which appellant relies.[5] That case concerned the question of whether, pursuant to section 362, subdivision (c), a court may order an unwilling stepparent to participate in certain programs as part of a reunification plan. The appellant was the minor's mother; the stepfather was not, as here, independently pursuing custody of the child. The court held that for purposes of section 362, subdivision (c), both the mother and the stepfather are relatives and accordingly may be compelled to participate in counseling as a condition to family reunification. Here, by contrast, we are not concerned with whether a court has the authority to order a stepparent to comply with reunification requirements, but with whether such a person is entitled as a matter of right to participate in a reunification plan independent of the rights accorded to his or her spouse as the parent of the child. In our opinion, the answer must be "no."
Our holding should not be interpreted to suggest that stepparent participation in reunification services is of no value. Indeed, it should be self-evident that where the stepparent lives with the natural parent, stepparent participation may be critical to accomplish the goal of alleviating the conditions that led to removal of the child and returning him or her to the family unit. The right to seek the child's return, however, belongs to the parent alone, not to his or her spouse.
Because appellant had no individual right to seek reunification with Jodi, the juvenile court was under no duty to afford him services to facilitate *1330 return of Jodi to his home. Since the adequacy of the reunification plan is not challenged in an appeal by Dianna, the issue is moot.

DISPOSITION
The appeal is dismissed.
Agliano, P.J., and Cottle, J., concurred.
Appellant's petition for review by the Supreme Court was denied April 11, 1991.
NOTES
[1] Further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] Appellant does not take the position that he is a de facto parent. Undoubtedly appellant recognizes that such an approach would not serve his purpose, since de facto parents are not entitled to reunification services. (In re Jamie G. (1987) 196 Cal. App.3d 675, 684 [241 Cal. Rptr. 869].)
[3] Section 362, subdivision (c), states, in pertinent part: "The juvenile court may direct any and all reasonable orders to the parents or guardians of the minor who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section.... Such an order may include a direction to participate in a counseling or education program, including, but not limited to, a parent education and parenting program.... A foster parent or relative with whom the minor is placed may be directed to participate in such a program in cases in which the court deems participation is appropriate and in the child's best interest. The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300."
[4] Contrary to appellant's representation, the holding he urges would not return Jodi to the family unit. Jodi's three half-siblings are permanently placed in other homes and her mother, by not appealing, has accepted the loss of the minor's custody. Thus, the result he seeks by pursuing the instant appeal as to Jodi would be the placement of Jodi in his sole custody.
[5] We note parenthetically, however, that a fair reading of the provision on which the In re Venus B. holding is based demonstrates that it was intended to apply to "a foster parent or relative with whom the minor is placed" while removed from the home. The sentence was not intended to apply to parents, since the previous sentence already granted the court authority to order parents and guardians to participate in such programs. We believe it extremely unlikely that the Legislature intended, as the In re Venus B. holding suggests, to deem "family reunification" a placement with foster parents or relatives. We therefore find the reasoning of In re Venus B. questionable.