Filed 3/15/22

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NATHANIEL MARCUS GANN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>REINA ACOSTA,<br><br>Defendant and Respondent. | F080831<br><br>(Super. Ct. No. MCV079584)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Nathaniel Marcus Gann, in pro. per., for Plaintiff and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Phillip J. Lindsay, Senior Assistant Attorney General, Maria G. Chan and Yun Hwa Harper, Deputy Attorneys General, for Respondent.

-ooOoo-

Appellant Nathaniel Marcus Gann, currently an inmate at Valley State Prison (VSP), appeals the superior court's denial of his petition (Petition) for a writ of traditional mandamus (Code Civ. Proc., § 1085) in which he sought an order directing respondent Reina Acosta, a correctional counselor with the California Department of Corrections and Rehabilitation (CDCR), to grant his request for an overnight visit with his spouse.  Gann contends, among other things, the court erred in deferring to the CDCR's interpretation of

the regulations that govern such privileges, and that respondent (and, by extension, CDCR) had a ministerial duty to grant his request. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 15, 2009, Gann was convicted of first degree murder (Pen. Code, § 187, subd. (a)). His biological sister, Brae Hansen (sister), was his codefendant in the trial and was found guilty of first degree murder with special circumstances by a separate jury (§§ 187, subd. (a); 190.2, subd. (a)(15)). The victim, Timothy MacNeil (victim), was the widowed spouse of Gann's biological mother and adoptive stepfather of Gann's sister. At the time of the murder, Gann's sister resided with the victim. Gann was sentenced to 25 years to life.

On July 7, 2016, Gann submitted a Family Visiting Application (Application) requesting an overnight family visit with his spouse. "Family visits are extended overnight visits, provided for eligible inmates and their immediate family members as defined in [California Code of Regulations, title 15,] Section 3000 ....”[1] (§ 3177.) Under CDCR regulations, "[f]amily visiting is a privilege." (§ 3177, subd. (b).)

The Application was denied for the following stated reasons: "Inmate not eligible for Family Visiting" and "Other[:] Commitment offense does not meet criteria per [section] 3177[, subd.] (b)(1)[,] murder of step-father (immediate family member per [section] 3000)." The denial bears the signatures of a "Counselor" (dated March 13, 2017) and a "Program Administrator" (dated April 25, 2017).[2]

Gann appealed the decision through three levels of administrative review. The First Level Response (FLR) to the appeal, dated April 27, 2017, signed by a Correctional

---

[1] All further references to sections are to the California Code of Regulations, title 15, unless otherwise indicated.

[2] The signature of the Program Administrator appears to read "R Acosta" (presumably, respondent).

Counselor II[3] and an Associate Warden, Housing, upheld the decision to deny Gann family visitation privileges. The FLR noted that "[i]n accordance with … section 3177[, subd.] (b)(1) [f]amily visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member … which includes … Penal Code section[ ]: 187 (when the victim is a family member as defined in [s]ection 3000 or minor) …." The FLR determined the victim met the definition of a stepparent under section 3000 because he "was the husband of [Gann's] biological mother." In responding to Gann's contention that his mother's death dissolved any link between Gann and the victim, the FLR further noted that Gann's sister was still living in the victim's home at the time of the murder, "therefore, a link between [Gann] and the victim did exist." A decision was rendered on the Second Level of Review by the Warden of VSP on June 20, 2017, and on the Third Level of Review by the CDCR Office of Appeals on August 23, 2017. Each time, Gann's administrative appeal was denied.

On December 14, 2018, Gann filed his Petition for a writ of traditional mandamus asking the superior court to issue a peremptory writ directing respondent to approve his Application or, in the alternative, an alternative writ directing respondent to provide the requested relief or show cause why respondent should not do so.

The superior court issued its tentative decision to deny the Petition on December 16, 2019. Gann objected to the tentative decision and a hearing on the matter was conducted. On January 17, 2020, the court issued a statement of decision in which it adopted its tentative ruling in its entirety and denied the Petition. That same day, the court entered judgment in favor of respondent and against Gann.

---

[3] The typewritten signature block for the Correctional Counselor II reads "R. ACOSTA, CORRECTIONAL COUNSELOR II, Valley State Prison" but the signature appears to read "4/M. Gallardo."

On February 13, 2020, Gann timely appealed the judgment.[4]

## DISCUSSION

### I.    Further Background

In 1997, at the age of 10, Gann ran away from his mother's home. In 2000, at the age of 13, Gann became a ward of the State of California. This was prior to his mother's marriage to the victim. Gann remained in foster care until his 18th birthday. During his mother's marriage to the victim, Gann was never a member of the couple's household or in his mother's custody.

Gann's mother died in 2006, approximately one year before Gann murdered the victim. As noted in the FLR, Gann's sister (and co-defendant) was still living with the victim at the time of the murder. CDCR considered these undisputed facts in denying Gann's Application.

As stated in the FLR, family visits are not allowed for inmates convicted of a violent offense (including first degree murder) if the victim was an "[immediate] family member" as defined in section 3000. (§ 3177, subd. (b)(1).) "Step-parents" are included in section 3000's definition of "immediate family members." (§ 3000.)

In 2016, the California Legislature passed Senate Bill No. 843 which was enacted as Penal Code section 6404. It provides: "Inmates shall not be prohibited from family visits based solely on the fact that the inmate was sentenced to life without the possibility of parole or was sentenced to life and is without a parole date established by the Board of Parole Hearings." (Pen. Code, § 6404.) On February 17, 2017, the Division of Adult Institutions (a division of CDCR) sent an informational memorandum to CDCR inmates, advising them of the recent enactment. The memorandum further advised, "Beginning

---

[4] In his notice designating the record on appeal, Gann initially chose to proceed with a record of oral proceedings in the superior court (i.e., a reporter's transcript). He subsequently moved this court to proceed without a reporter's transcript. The motion was granted.

February 20, 2017, inmates with life terms who otherwise meet the criteria as established in California Code of Regulations (CCR), Title 15, Section 3177 Family Visiting (Overnight), will be authorized to request a family visit."

## II.  Gann's Contentions

On appeal, Gann claims he met the criteria for family visitation.  He contends that his mother's death in 2006 dissolved her marriage to the victim.  For this proposition, Gann cites to *In re Marriage of Williams* (1980) 101 Cal.App.3d 507, which held, in the context of determining whether a marriage dissolution action survived the death of one of the spouses, "[w]hen one of the parties dies, dissolution occurs as a matter of law, and there is nothing left for a court to dissolve or annul.  'The dissolution is final, irrevocable, nonmodifiable, and nonappealable.' "  (*Id*. at p. 510.)  Because his mother's death occurred prior to the crime for which he was committed, Gann argues the victim cannot be considered his stepparent.

Gann further argues that, since he was never a member of the victim's household and was never in his mother's custody during her marriage to the victim, the victim never stood "in loco parentis" to him.[5]  He also maintains that his sister's relationship as a stepdaughter to the victim does not establish that the victim was Gann's stepparent.

Gann contends CDCR abused its "discretionary power" in determining the victim was his "stepparent" because CDCR's interpretation of the term does not comport with an established statutory or case law definition.  He further contends the superior court erred in deferring to CDCR's interpretation.  As a result, Gann argues he was denied family visitation privileges in violation of Penal Code section 6404 and the February 17, 2017, memorandum from the Division of Adult Institutions advising inmates of that

---

[5] The phrase "in loco parentis" has been defined in Black's Law Dictionary to mean "Of, relating to, or acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent."  (Black's Law Dict. (11th ed. 2019) p. 941, col. 1.)

law—i.e., he was denied those privileges solely based on his conviction of first degree murder. Gann contends respondent (and, by extension, CDCR) had a ministerial duty to grant his Application.

## III. Traditional Versus Administrative Mandamus

In addition to other arguments, respondent contends that a writ of traditional mandate is inappropriate because respondent's duty was not ministerial.[6] Respondent claims "mandate will not issue to compel an action unless the duty to act is 'plain and unmixed with discretionary power or the exercise of judgment[,]' " citing *Hutchinson v. City of Sacramento* (1993) 17 Cal.App.4th 791, 796. Respondent argues "the decision to grant or deny Gann family visits required the exercise of judgment."

We view respondent's argument as contending that administrative mandamus, rather than traditional mandamus, is the appropriate type of proceeding to challenge CDCR's determination in this matter. Administrative mandamus is available under Code of Civil Procedure section 1094.5 when the challenged decision is "the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer …." (Code Civ. Proc., § 1094.5, subd. (a).)

The choice of whether to challenge an agency action under traditional mandamus, as opposed to administrative mandamus, is not always straightforward. (*Southern California Cement Masons Joint Apprenticeship Committee v. California Apprenticeship Council* (2013) 213 Cal.App.4th 1531, 1541.) Arguably, Gann might have appropriately challenged the CDCR's determination in an administrative mandamus proceeding. Notwithstanding, this court may treat a petition for traditional mandamus as a petition for

---

[6] California uses the term "mandate" and "mandamus" interchangeably. (Code Civ. Proc. § 1084.)

administrative mandamus. (*Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1125.)

Here, we need not decide which form of mandamus was most appropriate. "The full panoply of rules applicable to 'ordinary' mandamus applies to 'administrative' mandamus proceedings, except where modified by statute." (*Woods v. Superior Court* (1981) 28 Cal.3d 668, 674.) Because this case turns on the proper interpretation of section 3000, our review is functionally the same under either form of mandamus.

## IV.     Standard of Review

Here, the foundational facts are not in dispute. At issue is whether those foundational facts support the conclusion that the victim was Gann's stepparent. Thus, we are required to interpret section 3000's use of the term "step-parent" in defining an "immediate family member."

Where, as here, the interpretation of a statute or regulation is involved, we apply a de novo standard of review. (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 217; *Children and Families Commission of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 57 ["De novo review is appropriate where the trial court's determination of whether statutory criteria were met presents an issue of statutory construction or a question of law."]; *Munroe v. Los Angeles County Civil Service Com.* (2009) 173 Cal.App.4th 1295, 1301 (*Munroe*).) This is true under both traditional and administrative mandamus. (*Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 522 [administrative mandamus]; *Munroe*, at p. 1301 [traditional mandamus].)

## V.      De Novo Review of CDCR's Regulatory Interpretation

"It is a 'black letter' proposition that there are two categories of administrative rules and that the distinction between them derives from their different sources and ultimately from the constitutional doctrine of the separation of powers. One kind—quasi-legislative rules—represents an authentic form of substantive lawmaking: Within its jurisdiction, the agency has been delegated the Legislature's lawmaking power.

7.

[Citations.] Because agencies granted such substantive rulemaking power are truly "making law," their quasi-legislative rules have the dignity of statutes." (*Yamaha Corporation of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10.)

The California Legislature has conferred broad quasi-legislative authority on the Secretary of the CDCR to "prescribe and amend rules and regulations for the administration of the prisons ...."[7] (Pen. Code, § 5058, subd. (a); *In re Cabrera* (2012) 55 Cal.4th 683, 688 (*Cabrera*).) The regulations at issue, sections 3000 and 3177, were promulgated pursuant to that authority. (See "Note" following § 3000; "Note" following § 3177.) Likewise, the Secretary of the CDCR has the authority to supervise, manage and control the state prisons and has "responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein ...." (Pen. Code, § 5054.) The Secretary must act, at times, through his or her subordinates. Thus, the law provides, "[w]henever a power is granted to the secretary or a duty is imposed upon the secretary, the power may be exercised or the duty performed by a subordinate officer to the secretary or by a person authorized pursuant to law by the secretary." (Pen. Code, § 5055.)

Here, Gann is not challenging the validity of sections 3000 and 3177. Rather, he is challenging the interpretation given to the phrase "step-parent[ ]" as that term is used in section 3000. Under such circumstances, we generally " 'defer to an agency's interpretation of its own regulations, particularly when the interpretation implicates areas

---

[7] The quasi-legislative rulemaking authority embodied in Penal Code section 5058 initially resided in the Director of Corrections. (Pen. Code, § 5058, subd. (a); *id.* at § 6080, subd. (b) [As used in Penal Code section 5058, the term " 'Director' refers to the Director of Corrections"].) In 2005, the Department of Corrections and the office of the Director of Corrections were abolished and replaced by the CDCR and the Secretary of the CDCR, respectively. (Pen. Code, §§ 5050, 5055; Gov. Code, § 12838.5.) The CDCR succeeded to "all the powers, functions, duties, responsibilities, obligations, liabilities, and jurisdiction of the … Department of Corrections." (Gov. Code, § 12838.5.) By legislative fiat, all references in the California Code to the office of the Director of Corrections were deemed to refer to the Secretary of the CDCR. (Pen. Code, § 5050.)

of the agency's expertise.' " (*Cabrera*, *supra*, 55 Cal.4th at p. 688.)  "As a general matter, courts will be deferential to government agency interpretations of their own regulations, particularly when the interpretation involves matters within the agency's expertise and does not plainly conflict with a statutory mandate."  (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 490.)  In reviewing such matters, the question for this court is "whether the construction offered by the CDCR, the agency that had promulgated the regulation and was charged with enforcing it, was clearly unreasonable."  (*Cabrera*, at p. 691.)

In acting on Gann's Application, CDCR interpreted the term "step-parent" to include the widowed husband of Gann's biological mother (deceased).  Given the broad authority conferred upon the Director of Corrections (now, the Secretary of CDCR) under Penal Code section 5058, that interpretation cannot be said to conflict with the Secretary's statutory authority.

Moreover, sections 3000 and 3177 involve matters within the agency's expertise. The Secretary (and, by extension, those employed by CDCR) are charged with authority to supervise, manage, and control the state prisons, and "responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein …." (Pen. Code, § 5054.)  Visitor safety is likewise an appropriate concern of CDCR.  (See, e.g., §§ 3170, subds. (a), (b), (d)(1); 3176; 3177, subd. (b)(1)(D); 3262; 3263; *Hudson v. Palmer* (1984) 468 U.S. 517, 526.)

Thus, we are left to decide whether the interpretation given to the term "step-parent" by CDCR is "clearly unreasonable."  (*Cabrera*, *supra*, 55 Cal.4th at p. 691.)  If it is not clearly unreasonable, we will defer to CDCR's interpretation.

Gann makes several arguments as to why the term "step-parent" should not include the victim.  He argues that the term "step[-]parent" as used in section 3000 "is not a quasi-legislative regulation in that it does not define step[-]parent but relies upon the existing statutory definition."

9.

We have already rejected the contention that the regulations at issue are not quasi-legislative. Although we concur with Gann that section 3000 does not define "step-parent," we nonetheless reject Gann's argument that CDCR must use the statutory definition of "stepparent" contained in subdivision (d)(2) of Family Code section 3101 in interpreting the regulations at issue. Said code section reads, in relevant part: "(d) As used in this section: [¶] … [¶] (2) 'Stepparent' means a person who is a party to the marriage that is the subject of the proceeding, with respect to a minor child of the other party to the marriage." (Fam. Code, § 3101, subd. (d)(2).) Initially, we observe that application of the definition is limited, by its own terms, to Family Code section 3101.

Moreover, there is no indication (as Gann suggests) that CDCR, in promulgating section 3000, relied on subdivision (d) of Family Code section 3101 (or any other existing statutory definition) in developing the regulation. In fact, the indication is directly to the contrary. Section 3000 defines "Immediate Family Members" as follows:

> "Immediate Family Members means legal spouse; registered domestic partner, natural parents; adoptive parents, if the adoption occurred and a family relationship existed prior to the inmate's incarceration; step-parents or foster parents; grandparents; natural, step, or foster brothers or sisters; the inmate's natural and adoptive children; grandchildren; and legal stepchildren of the inmate. Aunts, uncles and cousins are not immediate family members unless a verified foster relationship exists." (§ 3000.)

Notably, section 3000, itself, includes within its definition certain "immediate family members" based on their "legal" status—e.g., "legal spouse," and "legal stepchildren." That the CDCR included the modifier "legal" before certain categories of immediate family members but did not include such a modifier before the term "step-parent" indicates the CDCR did not intend to limit the term to a "legal" status. (See *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning."].)

In other regulations, CDCR has expressly adopted statutory definitions as part of its regulatory scheme. (See, e.g., § 3008 [expressly incorporating definition of Penal Code section 311]; § 3003 [expressly incorporating definition of Penal Code section 76]; § 3016 [expressly incorporating definition of Health and Safety Code section 11014.5]; § 3260.1 [expressly incorporating definition of Government Code sections 6250 et seq.]; § 3317.2 [expressly incorporating definitions from Penal Code section 2602 and Probate Code section 3200, et seq.].) Had the CDCR wanted to incorporate the provisions of a particular statute in defining the term "step-parent," it could have. Yet, it did not do so.

Gann's reliance on *In re Jodi B.* (1991) 227 Cal.App.3d 1322 (*Jodi B.*), and *In re Jason V.* (1991) 229 Cal.App.3d 1168 (*Jason V.*), is misplaced. At issue in *Jodi B.* was whether a stepparent had the same rights as a parent "to a reunification plan designed to facilitate return of [a] child to parental custody." (*Jodi B.*, at pp. 1323–1324.) In answering the question in the negative, the Court of Appeal said it must "assume that in using the word 'parent' the Legislature intended to refer to a person upon whom that status has been legally conferred—that is, a natural or adoptive parent." (*Id.*, at p. 1328.) The assumption was based on the principle that " '[When] a word or phrase has a well-known and definite legal meaning it will be construed to have the same meaning when used in a statute.' " (*Ibid.*)

*Jason V.* was cited by Gann for a similar proposition. At issue in that case was whether the term "parent" as used in Welfare and Institutions Code section 903 could be construed to mean an "aunt or uncle acting as a legal guardian." (*Jason V.*, *supra*, 229 Cal.App.3d at p. 1171.) In answering the question in the negative, the court stated the principle that " '[C]ourts should give effect to statutes "according to the usual, ordinary import of the language employed in framing them." ' " (*Ibid.*)

We do not take issue with any of the principles for which *Jodi B.* and *Jason V.* were cited. However, there are important distinctions between those cases and the case at bar. It was CDCR that promulgated the regulations in question—not the Legislature.

11.

Thus, any assumption that CDCR would necessarily employ a statutory definition for the term "step-parent" such as that contained in Family Code section 3101 is without foundation.[8]   (Moreover, as we have stated, the definition in Family Code section 3101 is expressly limited in application to that statute.)  Moreover, neither case attempted to define the confines or contours of the term "step-parent."  Rather, *Jodi B.* merely determined that a "step-parent" did not meet the definition of a "parent" as used in the statute there in question.  (*Jodi B.*, *supra*, 227 Cal.App.3d at p. 1328.)  Similarly, *Jason V.* merely determined that an "aunt or uncle acting as legal guardian" did not meet the definition of a parent for the purpose of the statute there at issue.  (*Jason V.*, *supra*, 229 Cal.App.3d at p. 1171.)

Finally, as respondent points out, the definition of a stepparent or stepfather is sufficiently broad to include the victim.  For example, Black's Law Dictionary has defined the term "step-father" as "The husband of one's mother by a later marriage."  (Black's Law Dict. (11th ed. 2019) p. 751, col. 1.)  The same or similar definitions can be found in online dictionaries.  For example, dictionary.com defines the term "stepfather" as "the husband of one's mother by a later marriage" (<http://www.dictionary.com/browse/stepfather> [as of Mar. 15, 2022]) and merriam-webster.com defines the term as "the husband of one's parent when distinct from one's natural or legal father."  (<https://merriam-webster.com/dictionary/stepfather> [as of Mar. 15, 2022]).  Whether the victim's marriage to Gann's mother dissolved prior to the crime at issue due to the mother's death is not dispositive.  Sections 3000 and 3177 do not require that the natural parent and stepparent both be living to apply the restriction.  It was not unreasonable to apply the term "step-parent" to the victim even though Gann's mother passed away approximately one year prior to Gann's murder of the victim.

---

[8] Gann has not directed us to any statute other than subdivision (d)(2) of Family Code section 3101 in support of his argument that section 3000 "relies upon the existing statutory definition" of "step-parent."

CDCR's interpretation of the term "step-parent" was not clearly unreasonable. Consequently, we conclude CDCR properly denied Gann's Application.

## DISPOSITION

The judgment is affirmed.[9]  Respondent shall be entitled to recover its costs on appeal.

SNAUFFER, J.

WE CONCUR:

POOCHIGIAN, ACTING P. J.

SMITH, J.

---

[9] Gann filed a Motion for Appointment of Counsel in connection with this appeal. A trial court has discretion to appoint counsel in a civil matter where an indigent prisoner is litigating to protect his or her personal or property rights.  (*Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 203–204; *Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 458.)  Assuming, without deciding, that an appellate court has similar discretion, we conclude Gann's personal and property rights are unaffected by this litigation.  Family visitation is a privilege, not a right.  (§ 3177, subd. (b); see *In re Cummings* (1982) 30 Cal.3d 870, 873.)  Accordingly, the motion is denied.