Filed 6/25/26  In re Dennis M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DENNIS M. III et al., Persons Coming Under the Juvenile Court Law. | B349013 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 25CCJP00210A-C) |
|     Plaintiff and Respondent, | |
|     v. | |
| D.M., Jr., | |
|     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Safaan K. Ahmed, Judge.  Affirmed.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn K. Louie, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel for Plaintiff and Respondent.

————————————

Dennis M., Jr. (father) appeals from a juvenile dependency disposition order, urging that the juvenile court erred by denying him reunification services pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(12) (section 361.5(b)(12)). Section 361.5(b)(12) provides that reunification services shall not be provided to a parent who has been convicted of a violent felony unless the court finds by clear and convincing evidence that reunification is in the child's best interests. (§ 361.5, subds. (b)(12), (c)(2).) Father concedes that he was convicted of a violent felony within the meaning of the statute and currently is in custody with an indeterminate release date, but he urges that the juvenile court abused its discretion by concluding that reunifying with father was not in his children's best interests.

We affirm. The trial court did not abuse its discretion because substantial evidence—including that father had been in custody most of the children's lives and did not have a meaningful bond with them—supports the juvenile court's best interest finding. The juvenile court therefore did not err in denying father reunification services.

---

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## a. Dependency Petition.

Father and Pamela L. (mother) have three children together: Dennis M. III (born in November 2011), Denim M. (born in November 2012), and Denise M. (born in February 2014). At the time of this appeal, the children are aged 14, 13, and 12 respectively. When this case began, father was serving a 16-year-to-life sentence for kidnapping, corporal injury of a spouse, assault with a firearm, and robbery. The children were living with their maternal grandmother and seeing mother daily. They had occasional telephone contact with father, who had been incarcerated since 2015.

In January 2025, police officers stopped a stolen car driven by mother, in which 12-year-old Denim was a passenger. Mother had an outstanding arrest warrant for assault with a deadly weapon, and during the stop, mother handed Denim a handbag containing crack cocaine and phencyclidine (PCP). Mother was arrested, and Denim was taken into protective custody.

In January 2025, the Los Angeles County Department of Children and Family Services (DCFS) filed a juvenile dependency petition alleging that the children were dependents pursuant to section 300, subdivisions (b)(1) and (j). The petition alleged that mother kept cocaine and PCP within Denim's reach and was arrested for possession of controlled substances (counts b-1, j-1), had a history of substance abuse and was a current abuser of cocaine and PCP (count b-2), and had been diagnosed with anxiety, depression, and bipolar disorder (count b-3). The petition further alleged that father had a lengthy criminal history and currently was incarcerated with an unknown release date (count b-4).

On January 23, 2025, the juvenile court ordered the children detained from both parents and placed with their maternal grandmother under DCFS supervision. On January 30, 2025, mother pleaded no contest to vehicle theft and drug possession, and she was sentenced to four years in state prison.

### b. DCFS Investigation and Reports.

The Jurisdiction/Disposition Report dated February 24, 2025 reflected DCFS's assessment of the children's needs and corresponding service and placement options, including its recommendations regarding family reunification. Reflected in the report were mother's family members' statements that mother has a drug problem, which mother alternated between admitting and denying. Mother acknowledged diagnoses of bipolar disorder, anxiety, depression, and posttraumatic stress disorder. She also reported to DCFS that the incident for which father was currently incarcerated involved him kidnapping and trying to kill her and the children.

The report also disclosed that two of the children—Dennis and Denise—have significant special needs that were discussed in the report and that DCFS considered in its recommendations. Dennis has a diagnosis of mild intellectual disability and autism spectrum disorder. He needs help with bathing, dressing, and toileting, has an individualized education plan, receives special services through his school, and his maternal grandmother reported that he "functioned at a 4-year-old mentality." Denise exhibited frequent explosive anger and aggression. She was hospitalized on mental health holds several times before DCFS became involved with the family, and then again in late February 2025 after an altercation with maternal grandmother. When DCFS was last updated on Denise's diagnosis, the record reflects

4

that she was "receiving treatment to address symptoms related to 'Disruptive Mood Disorder[,] . . . Attention-Deficit/hyperactivity Disorder[,] . . . [and was being assessed to] rule out Borderline Personality Disorder[,] . . . and rule out Autism Spectrum Disorder."

The report also reflected DCFS's attempts to assess the children's current relationship with their father and their interest in developing any further relationship. At twelve-year-old Denise's first interview in January 2025, she acknowledged that her father made some efforts to contact her and expressed that she was interested in having a relationship with father. Thirteen-year-old Denim stated that she knew nothing about her father except that "they had the same last name," and that he was in jail for " 'beating [ ] up' " mother. The report does not reflect Denim's preference regarding a relationship with father. With respect to fourteen-year-old Dennis, the report indicates that he was not engaged in answering the social worker's questions and did not provide any comment on his current or desired relationship with father.

In an update report in advance of a hearing scheduled for June 3, 2025, DCFS advised the court on the current status of the children's relationship with father. In April 2025, the court had ordered DCFS to facilitate monitored telephone or video calls between father and the children, however, both Denise and Denim "refused to have contact with father." At this time, Denise forcefully expressed that she did not " 'want to have anything to do with him' " and that she would not change her mind regarding her desire not to have contact. Denise attributed her opposition to having contact with father to his "name-call[ing]" mother and because mother would not like Denise to speak with him—

5

although she later retracted the latter rationale. Denise also previously told the social worker that she understood, based on her mother's retelling, that her father was in prison because he "put a gun to [her] mom's head" and kidnapped her and her siblings. Denim also refused contact with father, saying that she did not know him, and it would feel like " 'talking to a stranger.' " She firmly rejected the offers by DCFS to help her get to know him in a safe and structured way. DCFS did not provide an update regarding any attempts to discern Dennis's wishes.

DCFS also provided an update in advance of the scheduled July 14, 2025 hearing. It reported that Dennis and Denim were doing well in maternal grandmother's care, but Denise had again been hospitalized on a psychiatric hold after threatening to kill maternal grandmother. The children had not had virtual visits with father because they refused to speak to him telephonically or virtually. The social worker had encouraged the children to have contact with father, but "they continue[d] to refuse."

In the final update, provided in advance of the September 15, 2025 hearing, DCFS reported that Dennis and Denim continued to do well in maternal grandmother's care. Denim regularly spoke to mother by phone but said their relationship was " 'complicated,' " noting that phone calls often involved mother cursing and blaming the children. Denim said she felt safe with maternal grandmother and wanted to continue living with her even if mother regained custody. Denim continued to refuse phone calls with father. Denise was receiving treatment for disruptive mood disorder and attention deficit hyperactivity disorder. Denise spoke regularly with mother by telephone but continued to refuse any contact with father.

### c. September 15, 2025 Hearing.

The juvenile court held a combined jurisdiction/disposition hearing in September 2025. With regard to jurisdiction, mother's counsel asked that the entire petition be dismissed for lack of evidence, and father's counsel asked the court to dismiss the sole allegation against him. The children's counsel asked the court to dismiss the allegation against father, strike as nonjurisdictional the petition's language regarding mother's arrest, and otherwise sustain the petition. The juvenile court sustained counts b-1 and j-1 (mother's drug possession) after striking the language regarding mother's arrest; sustained counts b-2 and b-3 (mother's substance abuse and mental and emotional problems); and dismissed count b-4 (father's criminal history).

With regard to disposition, DCFS requested that the court remove the children from both parents, order reunification services for mother, and bypass reunification services for father pursuant to section 361.5(b)(12). Regarding reunification with father, DCFS asserted that the children had repeatedly expressed that they did not know father and did not wish to have a relationship with him. DCFS noted father would still be allowed telephonic visits and supervised in-person visits upon release and would not be precluded from having a relationship with the children in the future, but urged that he had not met his burden to show that reunification services were in the children's best interests.

Father's counsel conceded that the juvenile court could bypass services pursuant to section 361.5(b)(12), but argued that reunification was in the children's best interests. Counsel noted that father had been participating in services available to him in prison, and said that father "wants nothing more than to be

7

involved with his children and to have a relationship with his children." Further, since both mother and father were currently incarcerated, counsel argued that it was in the children's best interests to repair and maintain relationships with both parents.

Minor's counsel joined with father in requesting that father be granted reunification services. Minor's counsel acknowledged that the juvenile court had discretion to bypass services for father, but asserted that granting father reunification services was in the children's best interests because father appeared motivated to rehabilitate himself and to build a relationship with the children.

The juvenile court found by clear and convincing evidence that the factual predicate for section 361.5(b)(12) had been established—that is, that father had been convicted of a violent felony. The court further found that father had not established by clear and convincing evidence that reunification services were in the children's best interests. The court explained: "The father has been in custody for the majority of these children's lives. There hasn't been any evidence submitted to indicate some significant or substantial bond between these children and the father. The father did submit some documentation regarding services that he's been doing, but it's not very clear. . . . [I]t doesn't give . . . detailed information as to what actually occurred during those services that he's done while in custody. And therefore, the court does not believe by clear and convincing evidence that the father has established that it would be in the best interests of the children for him to have reunification service. So . . . on that basis, the court is bypassing the father and denying reunification services as to the father." The court granted father phone calls and video visits with the children

8

during his incarceration, and monitored visits with the children upon his release.

With regard to mother, the court ordered the children removed from her physical custody, and ordered mother to complete a full drug and alcohol program with aftercare, a 12-step program, a parenting program, and individual counseling. Mother was permitted phone and video calls with the children while she was incarcerated, and monitored visits weekly after her release.

Father timely appealed from the September 15, 2025 disposition order.

## II.  DISCUSSION

Father contends that reunifying with his children is in their best interests, and thus the juvenile court erred by denying him reunification services.  For the reasons that follow, the contention lacks merit.

Reunification services are intended to " 'facilitate the return of a dependent child to parental custody' " (*In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1281, quoting *In re Jodi B.* (1991) 227 Cal.App.3d 1322, 1326), and are statutorily required to be offered to most parents whose children are removed from their custody " 'in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child.  This furthers the goal of preservation of family, whenever possible.' " (§ 361.5, subd. (a); *In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)  However, section 361.5, subdivision (b) "sets forth certain exceptions—also called reunification bypass provisions—to this 'general mandate of providing reunification services[.]' (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 470 (*Joshua M.*); see *Mardardo F.* [*v. Superior Court* (2008)] 164 Cal.App.4th [481,]

9

485.)" (*Allison J.*, at p. 1112.) If a bypass provision applies, the court "shall not" order reunification services unless it finds, "by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "In sum, section 361.5, subdivision (a), provides that reunification services are mandatory unless a bypass provision applies; section 361.5, subdivision (b), lists the bypass provisions and provides that reunification services are discretionary if any of them apply; but section 361.5, subdivision (c), provides that *denial* of reunification services is *mandatory*, not discretionary, with respect to nearly all of the bypass provisions, unless the court makes certain countervailing factual findings." (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1141.)

DCFS bears the threshold burden of proving that a bypass provision applies, and the parent bears the burden to show that reunification would serve the children's best interests. (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1148; *In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1272; *In re I.A.* (2019) 40 Cal.App.5th 19, 24.) The juvenile court has broad discretion when determining whether reunification services are in the children's best interests, and the reviewing court " ' "will reverse that determination only if the juvenile court abuses its discretion." ' " (*In re A.E.*, *supra*, 38 Cal.App.5th at p. 1141.) We will uphold the juvenile court's determination if it is supported by substantial evidence and does not exceed the bounds of reason. (*Ibid.* ["If the juvenile court's finding that further services would be in the children's best interest is not supported by substantial evidence, then the order for such services constitutes an abuse of discretion"]; *In re Jaden E.*, *supra*, 229 Cal.App.4th at p. 1288 ["As has been oft repeated, when we review a juvenile court order for abuse of

10

discretion, the " 'appropriate test . . . is whether the trial court exceeded the bounds of reason' "]; see also *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121 (*Jennifer S.*); *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.)

The juvenile court found father was not entitled to reunification services pursuant to section 361.5(b)(12).  That section permits the juvenile court to bypass reunification services where a parent has been convicted of a "violent felony" within the meaning of Penal Code section 667.5, subdivision (c).  A violent felony includes, among other things, any felony punishable by "imprisonment in the state prison for life." (Pen. Code, § 667.5, subd. (c).)  Here, it is undisputed that father was convicted of a felony for which he is serving an indeterminate life sentence, and thus section 361.5(b)(12) unquestionably applies.  Father does not challenge this finding by the juvenile court.  The question before us, therefore, is whether the juvenile court abused its discretion in finding that reunifying with father is not in the children's best interests.

Because father bore the burden of proof on the best interests issue in the juvenile court, we review the juvenile court's ruling under the standard articulated in *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528, overruled in part on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010— that is, we consider whether "the evidence compels a finding in favor of the appellant as a matter of law."  Stated differently, we consider whether the father's evidence "was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.*, at p. 1528; accord; *In re J.M.* (2023) 89 Cal.App.5th 95, 111.)

The evidence before the juvenile court did not compel a finding that reunifying with father was in the children's best interests. None of the children have a meaningful bond with father. Father was incarcerated when Dennis was a toddler and Denim and Denise were babies, and the children have not seen him for many years. Father spoke with the children by telephone only sporadically during his incarceration, and Denim described him as " 'a stranger.' " Denise expressed fear of father, saying that he had tried to kill mother and would try again if he were released from prison. Further, none of the children currently wished to reunify with father, or even to have telephone contact with him.

Notwithstanding the foregoing, father urges that it is in the children's best interests to reunify with him because he strongly desires to have a relationship with the children, has made substantial efforts towards rehabilitation, and is eligible for parole in 2026, thus removing a barrier for his relationship with the children. Further, father maintains his innocence regarding the incident with mother that led to his current incarceration and is challenging this conviction with assistance of the Loyola Innocence Project. Whatever the factual merit of father's argument that this demonstrates that facilitating a relationship between him and the children is in their best interest, these arguments are not " 'of such a character and weight' " (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528) so as to compel this conclusion.[2] (See *Kobe A.* (2007) 146 Cal.App.4th 1113, 1123 [error was not prejudicial because the undisputed facts, including

---

[2] Of course, if father is paroled during the reunification period, he can seek modification of the disposition order based on changed circumstances. (§ 388.)

the father's incarceration shortly after the child's birth, his scheduled release date after the maximum reunification period, and the absence of a relationship between the father and child, "preclude any realistic possibility that the court would have found by clear and convincing evidence that reunification was in [the child's] best interests"].)

Father suggests that the children's best interests should be evaluated with reference to four factors, namely, " '(1) the parent's current efforts, fitness, and history; (2) the seriousness of the problem that led to the dependency; (3) the strength of the parent-child and caretaker-child bonds; and (4) the child's need for stability and continuity.' " (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1124.) While some courts have looked to these factors, many courts have noted that a child's best interests " ' "is an elusive guideline that belies rigid definition." ' " (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227; see also *In re D.B.* (2025) 111 Cal.App.5th 592, 608–609; *Jennifer S.*, at p. 1124 [same].) Nonetheless, even if we utilized father's proposed rubric for evaluating the children's best interest we would not come to a different result.

Father argues that he fairs "fairly well" under this analysis and that the first factor weighs in his favor because while "father had an extensive criminal history, . . . he wanted to better himself . . . [by] participating in several prison services through the EDOVO program to help better himself." The trial court considered father's rehabilitative efforts—which consisted of 31 total learning hours—and found that the record provided was insufficient to determine the nature and extent of self-improvement work completed by father. Moreover, we could not conclude that, as a matter of law, the 31 hours spent over the

13

course of a decade is strong evidence that father's "current efforts, fitness, and history" clearly demonstrate that reunification would be in the children's best interests. Father contends that the second factor is inapplicable to him because it was solely mother's conduct that resulted in the current dependency case. Further, because father is not seeking to remove the children from their maternal grandmother, he also claims that the third and fourth factors that "compar[e] the parents against the caretakers" are not applicable to him either, although he notes that maternal family members are generally supportive of his attempts to develop a relationship. Thus, father's best interest argument rests almost entirely on his rehabilitative efforts. We cannot say that the court abused its discretion by finding that father did not meet his burden on this record.

We therefore affirm the juvenile court's order denying father reunification services.

## DISPOSITION

The September 15, 2025 disposition order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

OCHOA, J.*

We concur:

EGERTON, Acting P. J.

HANASONO, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.