Filed 3/17/26  Berger v. Antonyan Miranda CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MICHELE BERGER,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>ANTONYAN MIRANDA, LLP,<br><br>  Defendant and Respondent. | D084941<br><br><br>(Super. Ct. No. 37-2019-00023427-CU-WT-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Law Office of Lincoln W. Ellis and Lincoln W. Ellis for Plaintiff and Appellant.

Law Office of Anthony J. Boucek and Anthony J. Boucek for Defendant and Respondent.


I

INTRODUCTION

Plaintiff Michele Berger appeals a judgment in favor of her former employer, defendant Antonyan Miranda, LLP (hereafter, Antonyan Miranda,

or the Firm), after a jury found that the Firm did not violate the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) when it terminated Berger's employment. She claims the trial court erred by allowing the Firm to redact an exhibit that the court had previously admitted into evidence in its unredacted form. We do not decide whether the court erred by permitting the redaction because, even if we assume error, Berger has not established prejudice. The judgment is affirmed.

## II

## BACKGROUND

In January 2017, the law firm of Antonyan Miranda hired Berger to serve as its Director of Operations.[1] The Director of Operations position oversaw and managed the Firm's finance department and administrative personnel. In May, the Firm terminated Berger's employment for the stated reason of poor performance.

After her termination, Berger filed the present lawsuit against the Firm. In the operative first amended complaint, Berger alleged she had suffered kidney failure the year before she began working for the Firm, which placed her in a temporary coma that caused her to suffer from pressure sores. One of her sores produced a permanent bald spot on her head. According to Berger, she requested a day off work in April to undergo plastic surgery for her bald spot, and a partner at the Firm seemed worried about the request, gave her "the cold-shoulder," and stopped speaking to her. Berger alleged the Firm terminated her based on her request for medical leave and her actual or perceived medical condition (her bald spot). Berger asserted causes of action for violations of FEHA based on disability discrimination, failure to make

---

[1] All further references to dates shall be to dates from the year 2017, unless otherwise noted.

2

reasonable accommodations and engage in the interactive process, and failure to prevent discrimination, and for wrongful termination of her employment in violation of public policy.

Antonyan Miranda moved for summary judgment or, in the alternative, summary adjudication. The parties did not include the Firm's motion in the appellate record. However, the record includes a seven-page declaration filed by Berger in opposition to the motion. In her declaration, Berger alleged she had kidney failure, went into a coma, and suffered scarring. She stated she requested a "few hours" off work to consult with a plastic surgeon for her scarring and bald spot in March, and she requested a day off work for the surgery in April. According to Berger, the partners had been "very positive" about her job performance before she made these requests, but their attitudes towards her deteriorated after she made the requests. She also alleged she disclosed her bald spot and showed it to one of the partners in mid-May, just days before her termination. Ultimately, the court granted the Firm's motion for summary adjudication, in part, as to the FEHA cause of action for failure to make reasonable accommodations and engage in the interactive process, though its reasons for doing so are not apparent from the record before us.

Thereafter, the parties entered a stipulation concerning the admission of evidence at the forthcoming jury trial on the remaining causes of action. Pertinent here, the stipulation stated, "At trial, the Parties will not seek to admit any expert witness testimony or expert reports on any issue, *any testimony from any witness concerning any medical diagnoses*, or any testimony from any witness concerning any medical treatment or medical costs relating to [Berger's] alleged emotional distress. [¶] ... At trial, the Parties will not raise [Berger's] emotional state or traumas, past or present, which are unrelated to the discrimination alleged in this matter, other than

3

for impeachment purposes." (Italics added.) Berger entered the stipulation for the apparent purpose of ensuring that certain mental health records would be excluded from evidence.

After the jury was empaneled, the defense objected to a demonstrative exhibit Berger intended to display to the jury during her opening statement. The exhibit stated that Berger disclosed her kidney failure to the Firm's partners after she started working there. The defense objected on the ground that the admission of evidence concerning Berger's kidney failure would violate the parties' stipulation. In reply, Berger's counsel acknowledged that her bald spot—not the kidney failure and coma that produced the bald spot—was the claimed disability giving rise to her claims. However, Berger's counsel argued that evidence relating to Berger's kidney disease was both relevant and outside the scope of the stipulation because, in their view, the stipulation only barred medical diagnosis testimony pertaining to Berger's alleged emotional distress. The court rejected this argument, adopted the defense's interpretation of the stipulation, and ordered Berger to remove the reference to kidney failure from her demonstrative exhibit. Consistent with this ruling, the parties did not (for the most part) seek to introduce evidence relating to Berger's kidney failure at trial.

At the outset of Berger's case in chief, she elicited testimony from Ilona Antonyan, one of the Firm's partners. Antonyan testified she was unaware Berger suffered from a disability, scarring, disfigurement, or a coma until Berger filed the present lawsuit. Although Antonyan was aware Berger had requested a day off work to undergo surgery, Antonyan stated she approved the time-off request without inquiring into the nature of the surgery. Antonyan testified that she and her co-partner, Timothy Miranda, terminated Berger because she consistently failed to complete her job-related

tasks in a timely manner and the partners routinely had to remind her about her job responsibilities.

Berger took the witness stand during her case in chief. She testified she was in a coma for five days in 2016, which caused her to suffer from a scalp disfigurement, or bald spot. She stated she did not disclose her conditions during her job interview with Antonyan Miranda. However, she claimed she told the partners in April that she would need to take a day off work to undergo surgery. Further, she testified that, in mid-May (a few days before her termination), she told Antonyan she had a bald spot from a coma that was caused by a medical condition. Berger said she showed her bald spot to Antonyan, who reacted with a "grossed out or disturbed" facial expression. Berger believed she was terminated because she "had a medical condition and [the Firm] didn't like that [she] needed to go to doctors' offices."

Midway through the cross-examination of Berger, defense counsel attempted to impeach her with two paragraphs from her seven-page declaration opposing the Firm's motion for summary judgment or summary adjudication (hereafter, exhibit 39), and to publish the paragraphs for the jury.[2] In reply, the court stated the defense could publish the declaration only if it was received into evidence. Therefore, over Berger's objection, defense counsel asked the court to admit exhibit 39. Defense counsel indicated that the Firm preferred to admit only the two paragraphs it intended to use for impeachment purposes, but doing so would require the preparation of a redacted exhibit, so the defense moved to admit the entire exhibit to "save time." The court admitted exhibit 39, and defense counsel published the two paragraphs at issue while purporting to impeach Berger.

[2] In the paragraphs defense counsel sought to use for impeachment purposes, Berger averred that she spoke to the Firm's partners in April about her need to take a day off work to undergo surgery.

5

Later that day, while Berger's cross-examination was still ongoing, defense counsel requested that the court withdraw exhibit 39 or permit the defense to prepare a redacted version of the exhibit showing only the two paragraphs the defense had used for impeachment purposes. In making the request, defense counsel argued that portions of the declaration contained hearsay. Berger objected to the request and the court ordered the parties to meet and confer. Berger rested her case in chief soon afterwards.

During the defense's case in chief, Miranda testified he was unaware Berger had a bald spot or issues with her hair, he never heard Antonyan comment on Berger's hair or bald spot, and he never disciplined Berger for missing work to attend medical appointments. Like Antonyan, Miranda testified Berger was terminated for her "overall poor performance," including her failure to timely complete her tasks and her "general lack of effort."

Several current and former Firm employees who reported to Berger during her tenure with the Firm—including billing specialists, a senior paralegal, and a receptionist—also testified as defense witnesses. Across the board, they described Berger's job performance in unflattering terms. They testified she lacked understanding about her job or the departments under her purview, she did not provide helpful guidance, solutions, or feedback to her subordinates, and she was disorganized, quick to anger, and disrespectful. None of the witnesses noticed anything unusual about Berger's hair, knew she had a disability, or heard the Firm's partners make negative statements about her hair.

After these witnesses testified, defense counsel reiterated its earlier request to submit a redacted version of exhibit 39 in lieu of the entire exhibit. This time, defense counsel emphasized that some of the paragraphs from the declaration referenced Berger's kidney dialysis and thus violated the parties'

6

stipulation. The court again deferred a ruling and instructed the parties to meet and confer.

On the last day of witness testimony, before Berger began her rebuttal case, defense counsel raised the issue of exhibit 39 once more. Berger's counsel again objected to the exchange of a redacted exhibit for the unredacted exhibit, arguing it could confuse the jury and, furthermore, the redacted portions of the exhibit could "*become*[] relevant" during the final day of witness testimony. (Italics added.) Over Berger's objection, the court granted the defense's request and exchanged the redacted version of the exhibit for the unredacted version.

After the close of evidence, the jury deliberated for less than two hours and returned verdicts for the defense on all causes of action.[3] For the disability discrimination cause of action, the jury found, by a vote of 11–1, that Berger did not have, or was not regarded by Antonyan Miranda as having, a disability or history of disability known to Antonyan Miranda. For the failure to prevent discrimination cause of action, the jury found, by a vote of 12–0, that Antonyan Miranda did not fail to take all reasonable steps to prevent Berger from being subjected to discrimination based on her disability, or being regarded as having a disability. Finally, for the wrongful termination cause of action, the jury found, by a vote of 10–2, that Berger's disability, or being regarded as having a disability, was not a substantial motivating reason for Antonyan Miranda's decision to discharge her.

Berger moved for a new trial on multiple grounds. Relevant here, she argued there was an irregularity in the proceedings (Code Civ. Proc., § 657(1)), and an error of law (*id.*, § 657(7)), when the court allowed the

---

[3]     We grant the Firm's motion to augment the record with the reporter's transcript from the final day of trial, which includes the reading of the jury's verdicts.

defense to exchange a redacted version of exhibit 39 for the unredacted version the court had previously admitted into evidence. She also argued there was insufficient evidence to justify the verdicts. (*Id.*, § 657(6).) Antonyan Miranda opposed the motion for a new trial and the court denied the motion.

The court concluded it had properly allowed the defense to redact exhibit 39 because Berger did not establish a foundation for the redacted portions of the exhibit, the exhibit included inadmissible hearsay, and any error was harmless. The court also rejected Berger's claim of insufficient evidence. The court found Berger did not make a sufficient showing that she had a disability because her bald spot did not limit a major life activity. It found Berger's testimony was "inconsistent and unbelievable," and her "lack of credibility tainted [her] entire case." Further, the court determined that any medical issue of which the Firm may have been aware was not the substantial motivating reason for its decision to terminate Berger. According to the court, the evidence showed Berger's "job performance was under performing or sub-standard. Indeed, so strong was the showing regarding [Berger's] poor job performance that, were it necessary to make a stronger finding on this issue, the Court would be comfortable characterizing [Berger's] job performance as 'abysmal.' [Berger] was hired, at a salary of $95,000.00 annually, to serve as the Director of Operations for a law firm. [Berger's] role within the firm was to take care of office and administrative tasks so that the named partners of the law firm could focus on the practice of law. It appeared to the Court from the strength of the evidence presented at trial that not only was [Berger's] job performance sub-standard, in fact, her job performance was so poor that it created additional work, caused more problems, and generally made life *more difficult* for the attorneys who hired

8

her—the very opposite of the purpose for which she was hired in the first place." The court concluded, "the jury got this one right, and resolving the matter as the jury did was neither difficult, nor a close-call."

Berger filed a timely notice of appeal from the judgment in favor of Antonyan Miranda.[4]

### III

### DISCUSSION

Berger challenges the trial court's evidentiary ruling permitting the redaction of exhibit 39, which, in effect, excluded from evidence the previously admitted portions of the exhibit that were subject to redaction.

Berger's claims of error are difficult to decipher. However, as best we can understand them, it appears Berger argues the court erred because: (1) the Firm waived its ability to seek redaction of exhibit 39 by offering the exhibit into evidence, (2) the parties' stipulation did not apply to the portions of exhibit 39 that were subject to redaction, and (3) material evidence, once admitted, may never be withdrawn from the jury's consideration. We do not address these claims because, assuming the court erred, Berger has not established that she was prejudiced by the alleged error.

Article VI, section 13 of the California Constitution states, "No judgment shall be set aside, or new trial granted, in any cause, on the ground

---

[4] In her opening brief, Berger states that she is appealing the denial of her motion for a new trial. However, the notice of appeal and the civil case information statement both indicate that Berger is appealing a *judgment* after a jury trial. Berger's opening brief also does not describe the factual or legal basis for her motion for a new trial, nor does it mention the court's ruling on her motion for a new trial. Moreover, as a matter of law, "[a]n order denying a motion for new trial is nonappealable." (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.) Thus, to the extent there is any ambiguity, we construe the notice of appeal as being taken from the underlying judgment. (See *id.* at p. 22.)

of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) This constitutional provision " 'empower[s]' appellate courts 'to examine "the entire cause, including the evidence," ' and 'require[s]' them 'to affirm the judgment, notwithstanding error, if error has not resulted "in a miscarriage of justice." ' " (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.)

The Legislature has enacted analogous statutory provisions prohibiting the reversal of a judgment without a showing of prejudice. Code of Civil Procedure section 475 provides, "No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed." (Code Civ. Proc., § 475.) Similarly, Evidence Code section 353 states, in part, "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] ... The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice." (Evid. Code, § 353, subd. (b).)

Where, as here, the claimed error is an evidentiary state law error, we apply the harmless error standard from *People v. Watson* (1956) 46 Cal.2d

818. (*Alliance San Diego v. California Taxpayers Action Network* (2025) 114 Cal.App.5th 1121, 1151.) "Under the *Watson* harmless error standard, it is the burden of appellant[] to show that it is reasonably probable that [she] would have received a more favorable result at trial had the error not occurred.' " (*Ibid.*; see *Bjoin v. J-M Manufacturing Co., Inc.* (2025) 113 Cal.App.5th 884, 900 [" 'In the case of civil state law error, this standard is met when "there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." ' "].)

We conclude Berger has not established a reasonable probability of a more favorable outcome but-for the court's granting of the defense's redaction request. The portions of exhibit 39 that were redacted, i.e., excluded from evidence, were almost entirely cumulative of Berger's trial testimony. At trial, Berger testified at length that she was comatose before she started working at the Firm, she suffered from scarring due to the coma, she requested time off work from the Firm's partners for a surgical consultation and surgery, she disclosed her coma and bald spot to Antonyan shortly before her termination, and she believed the Firm's partners approved of her work performance before she requested time off and disclosed her claimed disability—almost exactly the same allegations that were set forth in the redacted portions of her declaration. Because the jury received Berger's trial testimony concerning these topics, it is highly improbable the outcome of trial would have been different if the jury had received *more* of the same evidence

11

from Berger in the form of a written declaration.[5] (See *People v. Buenrostro* (2018) 6 Cal.5th 367, 399 [exclusion of witness testimony harmless because it was "cumulative of other testimony"]; *In re Venus B.* (1990) 222 Cal.App.3d 931, 936 ["We have reviewed the record and find ... there would be no prejudice in that much of the omitted evidence was cumulative."].)

Berger claims the jury "may well have" accepted her trial testimony as truthful if it had known her testimony was "consistent" with the averments she made in the redacted portion of her declaration. We are not persuaded. Berger signed her declaration *after* she filed this lawsuit against Antonyan Miranda, while she was actively litigating her case against the Firm. Thus, at the time Berger executed her declaration, she had every incentive to assert the same factual allegations she later made during her testimony. The mere fact that Berger continued to make the same factual allegations throughout the course of litigation says little or nothing about the veracity of those allegations. Indeed, the order denying Berger's motion for a new trial underscores how unlikely it is that the jury would have viewed her testimony differently had the court admitted the redacted portions of her declaration. In that order, the court—which viewed Berger's declaration in its entirety and heard her testimony—opined that Berger's testimony was "inconsistent and unbelievable," and her "lack of credibility tainted [her] entire case."

Berger also has not demonstrated a reasonable probability that the jury was confused by the court's redaction ruling, nor has she shown a probability that any possible confusion impacted the verdicts. There is no indication in

_____

5    In Berger's appellate briefs, she argues she would have "emphasized" these topics more during her testimony if she had known the court would allow the redaction of exhibit 39. This argument is not well-taken. Berger testified extensively about these topics, and she has not articulated any new or different facts she would have discussed during her testimony if she had known the court would allow the redaction of exhibit 39.

the record that the jury ever saw the redacted portions of exhibit 39, which theoretically might cause some confusion as to why those portions of the declaration were later redacted. The defense requested the publication of only two paragraphs from exhibit 39 during its brief attempt to impeach Berger with the exhibit (paragraphs 18 and 19), and those paragraphs remained unredacted after the court's redaction ruling.[6] Further, during its deliberations, the jury did not send notes to the court about exhibit 39 or express any other indication that it was confused by the redaction.

Finally, we cannot ignore the fact that Berger's case was relatively weak compared to the significantly stronger case presented by the defense. Berger did not present *any* evidence, apart from her own testimony, tending to show that her termination was motivated, in whole or part, by her claimed disability. By contrast, the defense made a strong showing that the Firm terminated Berger based on her weak job performance. Numerous witnesses testified that Berger's job performance was poor, if not "abysmal," to borrow a phrase used by the trial court. As the trial court explained, "the jury got this one right, and resolving the matter as the jury did was neither difficult, nor a close-call." From the record, it is apparent to us that the jury did not view this as a close call either. The jury returned decisive verdicts for the defense in less than two hours, finding the Firm not liable by a vote of 11–1 on the FEHA disability discrimination claim, 12–0 on the FEHA failure to prevent

---

6    The trial court also made statements suggesting that paragraphs 18 and 19 were the only portions of exhibit 39 that were published for the jury. During the defense's brief attempt to impeach Berger with exhibit 39, the court observed, "So we have [paragraph] 18 and the first part of [paragraph] 19 up on the screen." It did not state that any other portion of the exhibit was published, and the defense did not read any other portion of the exhibit aloud. Further, when Berger's counsel later argued that exhibit 39 should not be redacted because "it's already been published, the jury's seen it," the court replied that only "portions [of the exhibit] were published."

discrimination claim, and 10–2 on the wrongful termination claim. The swift and lopsided verdicts undercut any suggestion that Berger suffered prejudice from the redaction of exhibit 39.[7] (See *People v. Nieves* (2021) 11 Cal.5th 404, 462 [trial error was harmless where "the case was 'not close,' and the jury reached its verdict quickly"]; accord *Mitchell v. Gonzalez* (1991) 54 Cal.3d 1041, 1055 [10–2 verdict was "not particularly close"].)

IV

DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

CASTILLO, J.

---

[7] Although we conclude Berger's appeal is without merit, we do not believe it reaches the threshold of being frivolous. Therefore, we deny the Firm's motion for monetary sanctions for the filing of a frivolous appeal.